The Honorable Tana Lin

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| IMMERSION CORPORATION, | Case No. 2:23-cv-00712 |
| Plaintiff, | **DEFENDANT VALVE CORPORATION'S MOTION TO DISMISS COMPLAINT** |
| v. | **NOTE ON MOTION CALENDAR: AUGUST 18, 2023** |
| VALVE CORPORATION, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111, (415) 630-2350

# CONTENTS

AUTHORITIES ...................................................................................................... iii

INTRODUCTION AND RELIEF REQUESTED ........................................................ 1

FACTS ...................................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    A.    Immersion's infringement claims for five of the seven patents-in-suit should be dismissed based on patent ineligibility. ............................................ 2

        1.    The '260 patent claims are invalid because they cover a transitory computer-readable medium, and that isn't statutory subject matter. ......................................................................................... 3

        2.    Claim 1 of the '260 patent is also ineligible because it claims an abstract idea. ........................................................................................ 4

            a.    Abstract-idea eligibility challenges are evaluated using a two-step framework. ................................................................ 4

            b.    Another court has already concluded that a similar claim of another Immersion haptics patent is ineligible and therefore invalid. ........................................................... 5

            c.    Claim 1 is directed to the abstract idea of detecting pressures and providing tactile sensations in response. .................. 7

            d.    Nothing in claim 1 transforms it into significantly more than the abstract idea itself. ............................................ 8

        3.    Claim 1 of '042 patent is ineligible because it claims the abstract idea of generating virtual "detents" using haptic effects. ........................................................................................... 8

        4.    Claim 15 of '738 patent is ineligible because it claims the abstract idea of detecting proximity and touch information and generating a haptic response based on that information. ........................ 10

        5.    Claim 11 of '067 patent is ineligible because it claims the abstract idea of determining and transmitting "modified visual" and haptic effects based on sensor data. ................................................. 11

        6.    Claim 5 of '546 patent is ineligible because it claims the abstract idea of collecting information (including "extra-sensory information") and generating haptic effects that change as the inputs change. ....................................................................... 12

        7.    Immersion hasn't plausibly alleged infringement of valid claims of the '260, '042, '738, '067, and '546 patents. .......................... 14

    B.    The Court should dismiss the entire Complaint because Immersion hasn't adequately pleaded induced or direct infringement. ................................. 14

1.   Immersion hasn't plausibly pleaded that Valve induces its users to infringe. ..................................................................14

  a.   The Complaint doesn't allege specific intent to encourage infringement. ...........................................15

  b.   Immersion hasn't alleged pre-suit knowledge of the patents. ......................................................................17

2.   The Complaint doesn't state a claim that Valve directly infringes the patents. ....................................................19

  a.   Immersion pleads that Valve directly infringes the '260 patent by performing certain steps, but the '260 patent claims a computer-readable medium, not a method. ..................19

  b.   For the other six patents, the conclusory assertions that Valve performs the steps of the asserted method claims lack factual support and should be disregarded. ...........................19

C.   If any claims remain, they should be narrowed. ..................................................20

1.   Immersion's vague allegations that unspecified "games" infringe the patents fail to provide Valve with adequate notice and should be dismissed..................................................................20

2.   The Court should dismiss the prayer for pre-suit damages because Immersion hasn't pleaded compliance with the marking requirements of the Patent Act. ..................................................23

CONCLUSION..................................................................23

CERTIFICATION OF CONFERRAL ..................................................................25

# AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
   838 F.3d 1253 (Fed. Cir. 2016).................................................................. 9, 10, 12

*Alice Corp. v. CLS Bank Int'l,*
   573 U.S. 208 (2014)......................................................................... 3, 5, 13, 15

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.,*
   6 F.3d 1523 (Fed. Cir. 1993)............................................................................ 26

*Anza Tech., Inc. v. D-Link Sys., Inc.,*
   No. 3:16-cv-01263-BEN-AGS, 2016 WL 8732647 (S.D. Cal.
   Nov. 4, 2016) ................................................................................................... 24

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
   788 F.3d 1371 (Fed. Cir. 2015).......................................................................... 5

*Artrip v. Ball Corp.,*
   No. 1:14CV00014, 2017 WL 5037470 (W.D. Va., Nov. 03, 2017)................... 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................... 2, 22

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................... 23, 24

*Bot M8 LLC v. Sony Corp. of Am.,*
   4 F.4th 1342 (Fed. Cir. 2021) ..................................................................... 15, 19

*BSG Tech LLC v. BuySeasons, Inc.,*
   899 F.3d 1281 (Fed. Cir. 2018)......................................................... 6, 11, 13, 15

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsrch. Inst.,*
   No. 19-cv-05784-JST, 2020 WL 7392909 (N.D. Cal.
   July 23, 2020).................................................................................... 23, 24, 25

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
   859 F.3d 1352 (Fed. Cir. 2017)......................................................................... 3

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011).......................................................................... 9

*CyWee Grp. Ltd. v. HTC Corp.,*
   312 F. Supp. 3d 974 (W.D. Wash. 2018)..................................................... 17, 18

*DSU Med. Corp. v. JMS Co.,*
   471 F.3d 1293 (Fed. Cir. 2006)........................................................................ 19

*Eagle Harbor Holdings LLC v. Ford Motor Co.,* No. C11-5503BHS,
   2012 WL 398688 (W.D. Wash. Feb. 7, 2012) ................................................. 18

*Elec. Power Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016)............................................................................ 7, 10, 12, 13

*GoTV Streaming, LLC v. Netflix, Inc.,*
   No. 2:22-cv-07556-RGK-SHK, 2023 WL 2627016 (C.D. Cal.
   Feb. 16, 2023)........................................................................................................................ 20

*Immersion Corp. v. Fitbit, Inc.,*
   313 F. Supp. 3d 1005 (N.D. Cal. 2018) ............................ 4, 6, 7, 8, 9, 10, 12, 13, 14

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,*
   681 F.3d 1323 (Fed. Cir. 2012).......................................................................................... 16

*In re Nuijten,*
   500 F.3d 1346 (Fed. Cir. 2007)........................................................................................ 3, 4

*Intell. Ventures I LLC v. Capital One Fin. Corp.,*
   850 F.3d 1332 (Fed. Cir. 2017)............................................................................................ 5

*Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.,*
   No. C16-0341JLR, 2017 WL 5634131 (W.D. Wash. Nov. 21, 2017) ................................. 19

*Internet Patents Corp. v. Active Network, Inc.,*
   790 F.3d 1343 (Fed. Cir. 2015)............................................................................................ 3

*Interval Licensing LLC v. AOL, Inc.,*
   No. C10-1385 MJP, 2010 WL 5058620 (W.D. Wash.
   Dec. 10, 2010)....................................................................................................................... 25

*InVue Sec. Prods. Inc. v. Mobile Tech, Inc.,*
   No. 3:19-cv-407-SI, 2019 WL 5295464 (D. Or. Oct. 18, 2019) ........................................ 21

*KCG Techs., LLC v. CarMax Auto Superstores, Inc.,*
   424 F. Supp. 3d 196 (D. Mass. 2019) ................................................................................ 10

*KomBea Corp. v. Noguar L.C.,*
   73 F. Supp. 3d 1348 (D. Utah 2014) .................................................................................. 10

*Kremerman v. Open Source Steel, LLC,*
   No. C17-953-BAT, 2017 WL 3970894 (W.D. Wash. Sept. 8, 2017)..................................... 18

*Lough v. Brunswick Corp.,* 86 F.3d 1113 (Fed. Cir. 1996) .................................................... 3, 15

*Maxwell v. J. Baker, Inc.,*
   86 F.3d 1098 (Fed. Cir. 1996)............................................................................................. 26

*Mentor Graphics Corp. v. EVE-USA, Inc.,*
   851 F.3d 1275 (Fed. Cir. 2017)............................................................................................. 4

*Microsoft Corp. v. Multi-Tech Systems, Inc.,*
   357 F.3d 1340 (Fed. Cir. 2004)............................................................................................. 1

*Morales v. Square, Inc.,*
   75 F. Supp. 3d 716 (W.D. Tex. 2014) ................................................................................ 14

KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111, (415) 630-2350

*Papst Licensing GmbH v. Xilinx Inc.,*
    193 F. Supp. 3d 1069 (N.D. Cal. 2016) ............................................................. 10

*Ricoh Co. v. Quanta Comput. Inc.,*
    550 F.3d 1325 (Fed. Cir. 2008)................................................................. 17, 22

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
    873 F.3d 905 (Fed. Cir. 2017)........................................................................ 4

*Sharafabadi v. Univ. of Idaho,*
    No. C09-1043JLR, 2009 WL 4432367 (W.D. Wash.
    Nov. 27, 2009) ....................................................................................... 18

*Sonos, Inc. v. Google LLC,*
    591 F. Supp. 3d 638 (N.D. Cal. 2022) ............................................................. 20

*Trinity Info Media, LLC v. Covalent, Inc.,*
    __ F.4th __, No. 2022-1308, 2023 WL 4536366 (Fed. Cir.
    July 14, 2023)........................................................................................ 3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017)...................................................... 5, 9, 10, 12, 13

*Vita-Mix Corp. v. Basic Holding, Inc.,*
    581 F.3d 1317 (Fed. Cir. 2009)............................................................... 16, 19

*ZapFraud, Inc. v. Barracuda Networks, Inc.,*
    528 F. Supp. 3d 247 (D. Del. 2021)............................................................ 19, 20

**Statutes**

35 U.S.C. § 101 ............................................................................................. 2

35 U.S.C. § 112 ............................................................................................. 1

35 U.S.C. § 271 ........................................................................................... 14

35 U.S.C. § 287 ........................................................................................... 23

**Rules**

Fed. R. Civ. P. 12 ................................................................................... 1, 3, 23

**INTRODUCTION AND RELIEF REQUESTED**

Immersion's Complaint asserts infringement of seven different patents about haptic (touch or tactile) feedback, by two Valve hardware products, the Steam Deck and Valve Index, in combination with operating software and "game titles." Valve moves to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

The Court should dismiss the Complaint in whole or part because (i) five of the patents are long on jargon but short on invention, and thus are invalid based on Supreme Court precedent[1]; (ii) Immersion hasn't adequately pleaded induced or direct infringement for any of the seven causes of action; (iii) the Complaint is wildly overbroad, accusing unidentified games of infringement without any factual justification; and (iv) Immersion seeks pre-suit damages, but hasn't pleaded a necessary prerequisite to such damages—compliance with the marking requirements of the Patent Act.

**FACTS**

Immersion alleges that Valve directly infringes and induces users to infringe seven patents: Patents 7,336,260; 8,749,507; 9,430,042; 9,116,546; 10,627,907; 10,665,067; and 11,175,738 (each patent is hereinafter identified by its final three digits—e.g., the '260 patent). Compl. ¶ 1 (Dkt. # 1). No asserted patent shares a common specification with any of the others.[2] *See id.,* Exs. A-G. Immersion alleges that the patents generally relate to "systems and methods for generating haptic signals used to generate haptic feedback in, among other things, video game systems and controllers." Compl. ¶ 33. "Haptic feedback" provides "touch or tactile sensations to users of electronic devices," including sensations produced by "an actuator, such as a motor . . . ." *Id.* ¶ 41.

For each patent, Immersion alleges that Valve infringes "at least" one specified patent claim, with no facts alleged about any other claims. *E.g., id.* ¶ 54 (alleging that Valve infringes

---

[1] Valve doesn't, by this motion, challenge the validity of the two other patents-in-suit but may do so by, e.g., a motion for summary judgment.

[2] The specification is the text of the patent, along with its figures. *See* 35 U.S.C. § 112. Patents that derive from the same "parent" patent application—a patent "family"—share a common specification, although the numbered claims at the end of each patent would differ. *See Microsoft Corp. v. Multi-Tech Systems, Inc.,* 357 F.3d 1340, 1342 (Fed. Cir. 2004); 35 U.S.C. § 112(b).

"at least claim 1, of the '260 patent"). Specifically, it asserts Valve infringes claim 1 of the '260, '507, '042, and '907 patents; claim 5 of the '546 patent; claim 11 of the '907 patent; and claim 15 of the '738 patent. *Id.* ¶¶ 54, 87, 127, 155, 191, 213, 244. Details about the asserted claims are addressed below, as necessary.

Immersion accuses the "Accused Handheld Instrumentalities" and the "Accused VR Instrumentalities" of infringement. *Id.* ¶ 2. It defines each term to include Valve hardware—the Steam Deck or Valve Index—and operating software, but also to include unspecified "game titles." *Id.*

For each asserted patent claim, Immersion alleges Valve (a) induces its users to infringe; and (b) directly infringes. For inducement, it repeatedly alleges:

> On information and belief, Valve has taken active steps to induce infringement of at least [one claim] of [each asserted] patent by its users, knowing that these steps will induce, encourage, and facilitate direct infringement by its users in violation of 35 U.S.C. § 271(b). Such active steps include, but are not limited to, providing its users with instructions on the use of the above-described features.

*Id.* ¶¶ 84, 124, 152, 188, 210, 241, 282. For direct infringement, Immersion repeatedly alleges the legal conclusion that "*Valve* performs the claimed step under Valve's control for Valve's benefit." *E.g., id.* ¶ 104 (emphasis added). But each such legal conclusion follows allegations about *user* conduct. *E.g., id.* ¶ 101 (alleging that users playing the free technology demonstration *Moondust* crush moon rocks).

## ARGUMENT

The Court should grant Valve's motion to dismiss because Immersion's Complaint doesn't "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up).

### A. Immersion's infringement claims for five of the seven patents-in-suit should be dismissed based on patent ineligibility.

To be eligible for patent protection—patent eligible—an idea must be a new and useful "process, machine, manufacture, or composition of matter . . . ." 35 U.S.C. § 101. Those "four categories together describe the exclusive reach of patentable subject matter." *In re Nuijten,* 500 F.3d 1346, 1354 (Fed. Cir. 2007). "Transitory electrical . . . signals propagating through some

medium, such as wires . . . are not encompassed by any of [those] four enumerated statutory categories . . . ." *Id.* at 1352. "[T]hus, such a signal cannot be patentable subject matter." *Id.* at 1357.

Moreover, "abstract ideas are not patentable," as they're "basic tools of scientific and technological work," and monopolization would "tend to impede innovation more than it would tend to promote it." *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 216 (2014) (citations and quotation marks omitted). While patent eligibility is initially evaluated by the Patent Office, courts routinely reevaluate that eligibility when a patent is asserted in a lawsuit. *See Cleveland Clinic Found. v. True Health Diagnostics LLC,* 859 F.3d 1352, 1360 (Fed. Cir. 2017). If a particular patent claim isn't patent eligible, it's invalid. *Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1344 (Fed. Cir. 2015). And invalidity is a complete defense to infringement. *Lough v. Brunswick Corp.,* 86 F.3d 1113, 1123 (Fed. Cir. 1996).

Alleging infringement of an ineligible patent claim thus fails to state a claim, and courts can, in appropriate cases, determine patent eligibility on a motion to dismiss. Fed. R. Civ. P. 12(b)(6); *e.g., Trinity Info Media, LLC v. Covalent, Inc.,* __ F.4th __, No. 2022-1308, 2023 WL 4536366, at *3 (Fed. Cir. July 14, 2023) ("A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101."). In fact, as discussed below, another district court found another of Immersion's haptics patents to be patent ineligible, and thus invalid, on a motion to dismiss. *Immersion Corp. v. Fitbit, Inc.,* 313 F. Supp. 3d 1005, 1027-31 (N.D. Cal. 2018).

### 1.    *The '260 patent claims are invalid because they cover a transitory computer-readable medium, and that isn't statutory subject matter.*

Each claim of the '260 patent is directed to "[a] computer-readable medium having instructions" that cause a processor to perform certain steps. *E.g.,* Compl., Ex. A at 20:33-34[3] (claim 1). The specification states that "computer-readable media" can include a "transmission . . . channel" that can "transmit or carry instructions to a computer . . . ." *Id.* at 5:19-22.[4]

---

[3] Pin citations in the form *xx:yy* are to column *xx* and line *yy* of the cited patent.

[4] The Court can take judicial notice of the patent specification on a motion to dismiss. *Secured Mail Sols. LLC v. Universal Wilde, Inc.,* 873 F.3d 905, 913 (Fed. Cir. 2017).

Immersion is bound by this statement. *Mentor Graphics Corp. v. EVE-USA, Inc.,* 851 F.3d 1275, 1294 (Fed. Cir. 2017) (citing *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("the specification may reveal a special definition given to a claim term by the patentee," in which case "the inventor's lexicography governs")).

Based on the '260 patent's own definition, its claims to a "computer-readable medium having instructions" cover instructions transmitted over a transmission channel—which are, by necessity, transitory. And as discussed above, "transitory forms of signal transmission" aren't patent eligible. *Nuijten,* 500 F.3d at 1353-57; *Mentor Graphics,* 851 F.3d at 1294-95. Immersion cannot cure this defect by amending the Complaint. *Secured Mail,* 873 F.3d at 913 (allegations contradicting the patent specification aren't presumed true). The '260 patent infringement claim should thus be dismissed with prejudice.

### 2.   *Claim 1 of the '260 patent is also ineligible because it claims an abstract idea.*

Claim 1 of the '260 patent is ineligible for a second, independent reason—because it claims an abstract idea.

### a.   *Abstract-idea eligibility challenges are evaluated using a two-step framework.*

When evaluating whether a claim is patent ineligible because it claims an abstract idea, courts use a two-step framework—the *Alice* test. At step one, courts determine whether a claim is directed to an abstract idea. 573 U.S. at 217-18. As part of this first step, courts "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337 (Fed. Cir. 2017). "Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Id.* To be patent eligible the "law demands more" than a "result-oriented solution, with insufficient detail for how a computer accomplishes it." *Intell. Ventures I LLC v. Capital One Fin. Corp.,* 850 F.3d 1332, 1342 (Fed. Cir. 2017).

If a claim is directed to an abstract idea, courts then move onto step two of the *Alice* framework and examine what else is in the claim beyond that abstract idea. 573 U.S. at 217. This is a search for an inventive concept that transforms the claim into "significantly more" than the abstract idea itself, without which the claim is invalid. *Id.* at 217-18. Individual claim limitations that are "conventional, routine and well understood applications in the art" don't "supply an inventive concept." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.,* 788 F.3d 1371, 1378 (Fed. Cir. 2015). And "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.,* 899 F.3d 1281, 1290 (Fed. Cir. 2018). Thus, courts must decide whether "the claim limitations *other than the invention's use of the ineligible concept to which it was directed* were well-understood, routine and conventional." *Id.* (emphasis added).

        **b.**     ***Another court has already concluded that a similar claim of another Immersion haptics patent is ineligible and therefore invalid.***

Applying the two-step *Alice* test, another court held that a claim of a similar Immersion patent about haptic effects, Patent 8,638,301, was directed solely to an abstract idea, and thus invalid. *Fitbit,* 313 F. Supp. 3d at 1027-31. The '301 patent claim at issue in that case recites:

> A system comprising:
>
> a processor configured to:
>
> receive a first sensor signal from a first sensor, the first sensor configured to detect a movement of a first mobile device;
>
> receive a second sensor signal from a second sensor, the second sensor configured to detect an interaction with the first mobile device;
>
> receive a first data signal from a network interface, the network interface configured to receive signals transmitted by a second mobile device;
>
> determine a change in a display signal based at least in part on the first data signal and the second sensor signal;
>
> determine a haptic effect based at least in part on the first data signal; and
>
> outputting [sic] the haptic effect.

*Id.* at 1014 (quoting claim 27) (highlighting added). As can be seen, the claim merely recites various functions that could be carried out by a general-purpose computer—and provides no details about how to accomplish those functional results.

Granting a motion to dismiss based on patent ineligibility, the court applied the *Alice* test to invalidate this claim because it claims an abstract idea. *Id.* at 1010, 1027-31. Specifically, at step one, the court found that the claim consisted of limitations that relate to:

> (i)  input signals (the limitations highlighted blue);
>
> (ii)  generic data analysis (the limitations highlighted yellow); and
>
> (iii)  outputting haptic effects (the limitations highlighted pink).

*See id.* at 1028. The court found that receiving signals "amounts to nothing more than gathering data, which is an abstract idea." *Id.; see also Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("collecting information" is "within the realm of abstract ideas," even when the information is "limited to particular content"). Because the "determine" claim limitations didn't specify "particular rules or types of rules" for determining a change in display and a haptic effect, those limitations were "nothing more than generic data analysis," and abstract. *Fitbit,* 313 F. Supp. 3d at 1028. And the claim limitation for outputting a haptic effect— i.e., transmitting a signal to a generic haptic actuator[5]—was also abstract "because outputting a signal is no more than the transmission of data." *Fitbit,* 313 F. Supp. 3d at 1028*; see also Elec. Power,* 830 F.3d at 1354 ("merely presenting the results of abstract processes of collecting and analyzing information" is "abstract as an ancillary part of such collection and analysis" unless the claim recites a "particular tool for presentation"). In short, the entirety of the claim was directed to abstract, functional concepts.[6]

At step two of the *Alice* test, the court examined the claim, searching for an inventive concept that transformed it from abstract to patent eligible—an inventive concept that (a) "must

---

[5] An actuator is a device, such as a motor, that creates a physical sensation. *See* Compl. ¶ 41; *see also Fitbit,* 313 F. Supp. 3d at 1010 (quoting similar explanation of "actuator" from Immersion's complaint against Fitbit).

[6] Valve adds the same color-coded highlighting—blue for input signals, yellow for generic data analysis, and pink for output signals, like haptic effects, that are ancillary to the abstract idea—to the quoted patent claims throughout this brief.

be significantly more than the abstract idea itself," (b) "must be more than well-understood, routine, conventional activity," and (c) "cannot simply be an instruction to implement or apply the abstract idea on a computer." *Fitbit,* 313 F. Supp. 3d at 1029 (citations and quotation marks omitted). The court couldn't identify an inventive concept, instead concluding that the claim "calls on these generic components to perform their routine functions":

> Processors have long performed the functions of receiving signals, analyzing them, and outputting other signals in response. Nothing about the claim or specification suggests that the way these steps are accomplished are anything but generic—as explained above, the claims recite these steps only functionally and require no inventive algorithm or data structure for performing them.

*Id.* at 1030. The court thus held that the claim was directed to an abstract idea, and thus invalid. *Id.* at 1031.

### c.   *Claim 1 is directed to the abstract idea of detecting pressures and providing tactile sensations in response.*

Claim 1 of the '260 patent at step one of the *Alice* framework is similarly directed to an abstract idea—here, to the abstract idea of detecting three distinct and increasing pressures and providing tactile sensations in response. The claim recites:

> A computer-readable medium having instructions, the instructions including instructions that cause a processor to:
>
> detect a first pressure on a first input device;
>
> provide a first tactile sensation to the first input device, the first tactile sensation based at least in part on the first pressure;
>
> detect a second pressure on the first input device, the second pressure greater than the first pressure; and
>
> provide a second tactile sensation to the first input device, the second tactile sensation based at least in part on the second pressure;
>
> detect a third pressure on the first input device, the third pressure greater than the second pressure; and
>
> provide a third tactile sensation to the first input device.

Compl., Ex. A. at 20:33-46. It has three limitations about pressure signal inputs (blue) without instructions about *how* to detect pressures. These limitations, like the sensor data limitations in *Fitbit,* merely recite the abstract idea of collecting information. *See* 313 F. Supp. 3d at 1028. The

other three limitations recite outputting haptic effects (tactile sensations, pink) based on the pressure information (yellow) but, as in *Fitbit,* recite no rules or algorithm, so only recite transmission of data ancillary to the abstract idea. *See id.* Because it's directed to the functional results of providing responses to inputs, not to specific means or methods for accomplishing them, claim 1 is directed to an abstract idea. *Two-Way Media,* 874 F.3d at 1337.

> #### d. *Nothing in claim 1 transforms it into significantly more than the abstract idea itself.*

At step two of the *Alice* framework, claim 1 recites the abstract idea in the form of unspecified "computer-readable instructions" for a processor. That's a generic computer implementation of the abstract idea that cannot transform it into a patent-eligible application. *Fitbit,* 313 F. Supp. 3d at 1030 (processor and haptic feedback system are a generic implementation, not an inventive concept); *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1374 (Fed. Cir. 2011) (courts generally look to the underlying method performed by claimed instructions). A claim that "simply recites the use of generic features" and "routine functions" of a system isn't patent eligible. *Affinity Labs of Tex. LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1262 (Fed. Cir. 2016).

> ### 3. *Claim 1 of '042 patent is ineligible because it claims the abstract idea of generating virtual "detents" using haptic effects.*

Claim 1 of the '042 patent is ineligible for largely the same reasons. The claim recites:

> A method comprising:
>
> receiving an input signal comprising information associated with a manipulation of an input device configured to control a plurality of systems, wherein the input device comprises a touch-pad;
>
> receiving a detent profile associated with one of the systems, the detent profile comprising haptic data associated with a virtual detent; and
>
> generating a vibrotactile signal configured to cause an actuator to produce a vibrotactile effect to the input device, the vibrotactile effect comprising the virtual detent.

Compl., Ex. C at 15:2-13. The claim is directed to the abstract idea of receiving information from a touch-pad input device (first blue limitation), receiving a "detent profile" with "haptic data associated with a virtual detent" (second blue limitation), and generating a "vibrotactile signal"

comprising the virtual detent (pink). A "detent" is a "sense of mechanical resistance" such as a "click" that can, for example, divide the rotation of a shaft into discrete increments. *See id.* at 1:32-43. A "virtual detent" uses "vibrotactile feedback" to mimic a mechanical detent. *See id.* at 1:47-49. The claim thus is directed to the abstract idea of receiving information from a touch-pad and, instead of resistance from a mechanical detent, responding with a vibration that can be felt. *See* Compl. ¶ 148 (alleging that haptic effects when touching the edges of a trackpad are examples of a "virtual detent").

Claim 1 fails both *Alice* steps. At step one, as already discussed, receiving information and outputting a haptic effect are abstract ideas. *Elec. Power,* 830 F.3d at 1353; *Fitbit,* 313 F. Supp. 3d at 1028. The claim recites no details about the input signal or the detent profile, or how to generate the "vibrotactile" signal, and thus is directed to abstract functional results rather than specific means for achieving them. *Two-Way Media,* 874 F.3d at 1337.

Emulating functionality (here, a mechanical detent) is also an abstract idea. *See KCG Techs., LLC v. CarMax Auto Superstores, Inc.,* 424 F. Supp. 3d 196, 201 (D. Mass. 2019) (emulating handheld device on a screen is an abstract idea), *aff'd,* 826 F. App'x 928 (Fed. Cir. 2020); *KomBea Corp. v. Noguar L.C.,* 73 F. Supp. 3d 1348, 1356-57 (D. Utah 2014) (mimicking real conversation using a prerecorded script is an abstract idea), *aff'd,* 656 F. App'x 1022, 1353-55 (Fed. Cir. 2016; *see also Papst Licensing GmbH v. Xilinx Inc.,* 193 F. Supp. 3d 1069, 1084-85 (N.D. Cal. 2016) (claimed "simulator" implemented with generic components is an abstract idea), *aff'd,* 684 F. App'x 971 (Fed. Cir. 2017).

At step two, nothing saves the claim because other than the abstract idea itself, it recites only generic computer hardware, like "an input device" and "an actuator," which isn't inventive. *Fitbit,* 313 F. Supp. 3d at 1030 (generic implementation of processor and haptic feedback system isn't inventive); *DIRECTV,* 838 F.3d at 1263 (generic implementation with conventional steps at a high level of generality isn't inventive). Claim 1 of the '042 patent is ineligible because "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech,* 899 F.3d at 1290.

> **4.      *Claim 15 of '738 patent is ineligible because it claims the abstract idea of detecting proximity and touch information and generating a haptic response based on that information.***

Claim 15 of the '738 patent recites:

> A method comprising:
>
> detecting, by a proximity sensor, a non-contact interaction with a touch-sensitive device;
>
> detecting, by a touch sensor, a touch on the touch-sensitive device;
>
> transmitting a first sensor signal associated with the non-contact interaction to a processor;
>
> transmitting a second sensor signal associated with the touch to a processor;
>
> receiving, by the processor, the first and second sensor signals;
>
> generating, by the processor, a haptic output signal based at least in part on the first and second sensor signals;
>
> transmitting, by the processor, the haptic output signal to a haptic output device; and
>
> outputting, by the haptic output device, a haptic effect in response to the haptic output signal.

Compl., Ex. G at 14:57-15:6. Claim 15 is directed to the idea of detecting both contact and non-contact information (blue) and responding with a haptic effect (pink) based on that information (yellow). For example, Immersion alleges that "non-contact" data can include information about the position of a finger, and that embodiments of the claim can include detecting if a controller trigger is pulled while also generating a haptic effect if a detected finger movement makes a virtual finger touch a virtual object:



*See* Compl. ¶¶ 260, 277-78. Receiving and processing contact and non-contact information is an abstract idea, as is generically generating a response. *Elec. Power,* 830 F.3d at 1353; *Fitbit,* 313 F. Supp. 3d at 1028; *Two-Way Media,* 874 F.3d at 1337. Because claim 15 recites nothing other than generic inputs, generic data analysis, and generic outputs, at step one it's directed to an abstract idea.

At step two, beyond the abstract idea, the only things in claim 15 are basic and generic steps. But "simply appending conventional steps specified at a high level of generality" to an abstract idea doesn't transform it into significantly more than the abstract idea. *DIRECTV,* 838 F.3d at 1263 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,* 566 U.S. 66, 82 (2012)). Claim 15 thus also fails at step two.

> **5.** **Claim 11 of '067 patent is ineligible because it claims the abstract idea of determining and transmitting "modified visual" and haptic effects based on sensor data.**

Claim 11 of the '067 patent recites:

> A method comprising:
>
> determining a modified visual effect based in part on data received from a sensor;
>
> determining a haptic effect based in part on data received from the sensor;
>
> transmitting a display signal associated with the modified visual effect to a display, the modified visual effect being displayed on a surface of a proxy object via the display, the proxy object comprising one or more haptic output devices;
>
> transmitting a haptic signal associated with the haptic effect to the one or more haptic output devices; and
>
> outputting the haptic effect using the one or more haptic output devices.

Compl., Ex. F at 11:20-33. Immersion alleges that the "modified visual effect" limitations can be met by, for example, displaying virtual hands over the surface of a game controller in a virtual reality display. Compl. ¶ 230.

At step one, generic "data received from a sensor" (blue), generic data analysis to determine a modified visual effect (yellow), and outputting the resulting displays and haptic effects (pink) are, as already discussed, abstract ideas. *Elec. Power,* 830 F.3d at 135; *Fitbit,* 313

F. Supp. 3d at 1028; *Two-Way Media,* 874 F.3d at 1337. The recitation of a "modified visual effect" is also an abstract idea. *Fitbit,* 313 F. Supp. 3d at 1027-28 ("displaying the results" is an abstract idea, as is "determining a change in display signal and determining a haptic effect based on the received signals").

Claim 11 also fails at step two, because it recites nothing more than the abstract idea itself. *BSG Tech,* 899 F.3d at 1290 (abstract idea itself can't be the inventive concept). At most, it limits the abstract idea to the technological environment of a visual effect being displayed on a haptic output device. But "limiting the use of an abstract idea to a particular technological environment" can't "transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice,* 573 U.S. at 223 (cleaned up).

>    **6.      *Claim 5 of '546 patent is ineligible because it claims the abstract idea of collecting information (including "extra-sensory information") and generating haptic effects that change as the inputs change.***

Claim 5 of the '546 patent recites:

> A computer-implemented method for generating a haptic effect, the computer-implemented method comprising:
>
> receiving input from a sensor, wherein the input comprises extra-sensory information, wherein the input further comprises one or more interaction parameters, and wherein each interaction parameter comprises a value;
>
> mapping the received input to a haptic signal; and
>
> sending the haptic signal to an actuator to generate the haptic effect;
>
> the mapping the received input to the haptic signal further comprising modulating the haptic signal when new input is received, wherein the new received input comprises an update of at least one value of at least one interaction parameter of the received input; and
>
> the sending the haptic signal to the actuator to generate the haptic effect further comprising sending the modulated haptic signal to the actuator to modulate the generated haptic effect.

Compl., Ex. D at 17:45-62. Its many words recite only high-level generalities directed to the abstract idea of generating haptic effects (yellow) using conventional sensors (blue) and actuators (pink), including "extra-sensory information" (blue), where the haptic effect varies— modulates—based on changes in the inputs (pink). Immersion alleges that claim 5 can be satisfied by, for example, receiving position information (which it alleges is extra-sensory

information), and changing how a game controller vibrates when a user squeezes harder (modulating the haptic signal when the input changes). *See* Compl. ¶¶ 165, 178.

At step one, claim 5 generically requires "mapping the received input to a haptic signal," and "sending the haptic signal to an actuator to generate the haptic signal to an actuator," but the only detail about either step is that the haptic signal should be modulated—changed—if the input signal changes. Generically changing a response based on changed inputs is an abstract idea. *See Fitbit,* 313 F. Supp. 3d at 1028 ("determining a change in display signal and determining a haptic effect based on the received signals" by "unspecified rules or algorithms" is "nothing more than generic data analysis").

The "extra-sensory information" isn't inventive either. Extra-sensory information is "information that cannot normally be perceived by a human being, such as an electromagnetic field, infra-red light, ultra-violet light, radiation, or subtle changes in temperature." Compl., Ex. D at 2:17-20. But components such as an infrared receiver—a common component of devices like remote controls—are "generic hardware" and "not an inventive concept." *Morales v. Square, Inc.,* 75 F. Supp. 3d 716, 726 (W.D. Tex. 2014), *aff'd,* 621 F. App'x 660 (Fed. Cir. 2015). Claim 5 provides no details about the extra-sensory input—only that it should have "one or more interaction parameters," where each parameter has a "value." As pleaded, Immersion doesn't even assert that the extra-sensory information must be used in performing the other steps. *Compare* Compl. ¶ 165 (alleging position information from "sync pulses and lasers lines" is extra-sensory information) *with id.* ¶ 178 (alleging haptic signal is modulated when a user squeezes harder, without mentioning position information). At most, reciting that extra-sensory information must be received limits the abstract idea to a particular technological environment, which doesn't make claim 5 less abstract. *Alice,* 573 U.S. at 223.

The claim fails again at step two. Claim 5 recites "receiving input from a sensor" (including extra-sensory information), mapping it to a haptic signal sent to an actuator, and changing the haptic signal when the input changes. That's the abstract idea itself, so can't transform the claim into a patent-eligible invention. *BSG Tech,* 899 F.3d at 1290. Claim 5 of the '546 patent thus is ineligible.

7.      *Immersion hasn't plausibly alleged infringement of valid claims of the '260, '042, '738, '067, and '546 patents.*

The asserted claims of the '260, '042, '738, '067, and '546 patents thus are invalid because they're ineligible. *See* Arg. A.2-6, *supra.* Because Valve can't infringe invalid claims, *Lough,* 86 F.3d at 1123, Valve doesn't infringe the asserted claims.

And Immersion hasn't alleged factual content about any claim other than a single, invalid claim of each patent-in-suit. To state a claim for patent infringement, the well-pleaded allegations must show that the plaintiff has a plausible claim for relief. *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Iqbal,* 556 U.S. at 679). A plausible claim must "support the grounds for that entitlement with sufficient factual content," with more than "labels and conclusions." *Id.* at 1352-53 (cleaned up). Because the Complaint's only factual content about the '260, '042, '738, '067, and '546 patents is about invalid claims, Immersion hasn't stated a claim that Valve infringes those patents.

**B.      The Court should dismiss the entire Complaint because Immersion hasn't adequately pleaded induced or direct infringement.**

Immersion asserts that Valve infringes seven patents under two theories. First, Immersion alleges that Valve induced its users to infringe all asserted claims of the patents-in-suit. 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Second, in a series of conclusory assertions, Immersion claims that Valve also directly infringes the asserted claims. *Id.* § 271(a) (one who, without authority, within the United States, and during a patent's term, "makes, uses, offers to sell, or sells any patented invention" or imports into the United States a patented invention infringes). But Immersion fails to allege *facts* that make either theory plausible for any patent-in-suit, and therefore fails to state a claim for infringement of any of them.

1.      *Immersion hasn't plausibly pleaded that Valve induces its users to infringe.*

Liability for induced infringement "requires a showing that [1] the alleged inducer knew of the patent, [2] knowingly induced the infringing acts, and [3] possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d

1317, 1328 (Fed. Cir. 2009). Because Immersion fails to plead the third and first elements adequately, the Court should dismiss the inducement claims.

### a.  *The Complaint doesn't allege specific intent to encourage infringement.*

The Complaint fails to plead facts showing that Valve specifically intends to encourage users to infringe, the third element of an inducement claim. Immersion instead repeatedly and summarily alleges, on information and belief, that Valve takes "active steps" to induce user infringement that "include, but are not limited to, providing its users with instructions" on the use of the allegedly infringing features. Compl. ¶¶ 84, 124, 152, 188, 210, 241, 282.

A claim for induced infringement "must contain *facts* plausibly showing that [the defendant] specifically intended their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (emphasis added). "This scienter standard is demanding because the law is reluctant to find liability when a defendant merely sells a commercial product suitable for some lawful use." *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 978 (W.D. Wash. 2018) (cleaned up).

For each patent, Immersion vaguely and rotely references "instructions" that Valve supposedly provides to its users "on the use of the above-described features." Those "users" are users of the accused Valve hardware—consumers who use the Valve Index or Steam Deck. *See* Compl. ¶¶ 44 (accusing Valve Index), 45 (accusing Steam Deck), 49 ("users" must log into a Steam account to access "the user's" games). For the '260 patent, asserted claim 1 can only be infringed by a computer-readable medium with certain instructions—and for several limitations, Immersion's only factual infringement allegations are about the free technical demonstration *Moondust. Id.* ¶¶ 63-65, 67-69, 71-72, 74-75, 77-78, 80-81. But Immersion doesn't allege that Valve induces users to install *Moondust* (with its processor instructions) on computer-readable media.[7]

---

[7] Immersion doesn't allege that Valve sells the accused hardware with *Moondust* preinstalled, either.

KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111, (415) 630-2350

For the other six patents, Immersion asserts only method claims. Compl. ¶¶ 88, 128, 156, 192, 214, 245. A method claim is only infringed when the steps of the method are actually performed. *See Ricoh Co. v. Quanta Comput. Inc.,* 550 F.3d 1325, 1335 (Fed. Cir. 2008). But Immersion doesn't allege *facts* that make it plausible that Valve provides "instructions" to users that actively encourage them to download and play games in a way that allegedly performs each step of the asserted method claims.

Indeed, the only "instructions" even generally cited in the Complaint are documentation for *game makers,* not users. *See id.* ¶¶ 84 n.62, 124 n.85, 152 n.95, 188 n.127, 210 n.133, 241 n.152, 282 n.173. Immersion doesn't identify a single instruction from the cited documentation that allegedly actively encourages infringement of any asserted claim—or facts showing how Valve encourages *users* at all with documentation for *game makers.* Plus, the Complaint alleges that the accused instrumentalities include "games," but doesn't identify *which* games, or explain how Valve encourages users to play each unidentified game in infringing ways. *See* Arg. C.1, *infra.*

Cases from this district confirm this isn't enough to plead inducement. In *CyWee*, the court explained that advertisements and promotions "must advocate for use in an infringing manner for the court to reasonably infer specific intent. Where defendants have not touted the benefits of the accused products in ways that track the asserted patents, courts generally do not infer specific intent." 312 F. Supp. 3d at 979 (citations omitted). The court dismissed the inducement claim because "[a]lthough CyWee asserts that HTC continued to create and disseminate product manuals, instructions, and marketing materials, it offers no specific details about those promotional and instructional materials." *Id.* at 980.

Immersion's inducement claim is no different; it hasn't plausibly alleged that Valve acts with the specific intent to encourage users to infringe. *See also Kremerman v. Open Source Steel, LLC,* No. C17-953-BAT, 2017 WL 3970894, at *3 (W.D. Wash. Sept. 8, 2017) (plaintiff "failed to allege who was induced to infringe, how they infringed, and how defendants had knowledge that the induced acts occurred and that they constituted patent infringement"); *Eagle Harbor Holdings LLC v. Ford Motor Co.,* No. C11-5503BHS, 2012 WL 398688, at *2 (W.D. Wash.

Feb. 7, 2012) (plaintiff "provided mere labels and conclusions that Ford induced infringement of others," but no "facts to support the necessary elements of this claim such as Ford's knowledge of the patents or a specific intent to induce infringement"); *Sharafabadi v. Univ. of Idaho*, No. C09-1043JLR, 2009 WL 4432367, at *5 (W.D. Wash. Nov. 27, 2009) (plaintiff didn't allege "any facts concerning either how PNW induced or contributed to another party's direct infringement . . . .").

The Complaint lacks such allegations. "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). Immersion's allegations are mere labels and conclusions, *see Bot M8*, 4 F.4th at 1352-53, which aren't enough to plead scienter. The Court should dismiss the inducement claims for all patents-in-suit.

**b.** ***Immersion hasn't alleged pre-suit knowledge of the patents.***

The Court should also dismiss the inducement claims because Immersion hasn't alleged that Valve knew of the patents before it filed the suit. Knowledge of the patent is the first element of a claim for inducing patent infringement. *Vita-Mix*, 581 F.3d at 1328. Immersion pleads only that Valve knows of each asserted patent "[b]y way of at least this Complaint." Compl. ¶¶ 85, 125, 153, 189, 211, 242, 283. It doesn't plead that Valve had knowledge of any asserted patent *prior* to being served.

District courts are divided on whether post-suit knowledge can state a claim for inducement. *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 & n.1 (D. Del. 2021) (noting split and collecting cases). In this district, Judge Robart in 2017 held that pre-suit knowledge of the asserted patents isn't required to state a claim for inducement. *Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*, No. C16-0341JLR, 2017 WL 5634131, at *12 (W.D. Wash. Nov. 21, 2017). But several more recent out-of-district cases[8] persuasively explain why pre-suit knowledge should be required.

---

[8] Courts in this district—including in *Intellicheck*—regularly look to out-of-district patent decisions for persuasive guidance. *See, e.g., id.* at *5-6, 11-13 (citing N.D. Cal., C.D. Cal., D. Del., and E.D. Va. decisions).

KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111, (415) 630-2350

For example, in *ZapFraud,* Judge Connolly reasoned that "the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement . . . ." 528 F. Supp. 3d at 250. "The purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *Id.* at 251 (citation and quotation marks omitted). Requiring pre-suit knowledge is consistent with the law for non-patent claims:

> ZapFraud has identified, and I know of, no area of tort law other than patent infringement where courts have allowed a plaintiff to prove an element of a legal claim with evidence that the plaintiff filed the claim. The limited authority vested in our courts by the Constitution and the limited resources made available to our courts by Congress counsel against encouraging plaintiffs to create claims by filing claims. It seems to me neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement and enhanced damages.

*Id.*

Agreeing with Judge Connolly, Judge Klausner in *GoTV Streaming, LLC v. Netflix, Inc.* concluded that "without any allegation of pre-suit knowledge of the patent, Plaintiff's complaint served as a vehicle to create an induced infringement claim that was unavailable at the time of the complaint." No. 2:22-cv-07556-RGK-SHK, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023). The court further rejected the argument that an *amended* complaint can allege knowledge of the patent based on the filing of the *original* complaint. *Id.* "If Plaintiff were permitted to bring an amended complaint for induced infringement, Defendant would be forced to cease all allegedly infringing conduct once a complaint is filed to avoid such claims in the future." *Id.* (cleaned up). Reaching the same conclusion in *Sonos, Inc. v. Google LLC,* Judge Alsup held that "without a notice letter or [other forms of notice], the complaint will generally not be adequate to serve as notice for either willful or indirect infringement." 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022). And in *InVue Sec. Prods. Inc. v. Mobile Tech, Inc.*, Judge Simon held "that InVue must allege pre-suit knowledge of the patents-in-suit to survive MTI's motion to dismiss." No. 3:19-cv-407-SI, 2019 WL 5295464, at *3 (D. Or. Oct. 18, 2019).

In view of these post-*Intellicheck* cases, Valve urges the Court to hold that, to state a claim for inducement, a plaintiff must plead that the defendant knew of the patents prior to the filing of the litigation.

1

### 2.     *The Complaint doesn't state a claim that Valve directly infringes the patents.*

2

Immersion also alleges that Valve directly infringes the patents. These claims, too, are

3

pleaded inadequately.

4

#### a.     *Immersion pleads that Valve directly infringes the '260 patent by performing certain steps, but the '260 patent claims a computer-readable medium, not a method.*

5

6

Immersion alleges that Valve directly infringes claim 1 of the '260 patent because it

7

allegedly "performs all . . . of the claimed steps." Compl. ¶ 83. Claim 1, however, claims a

8

"computer-readable medium having instructions, the instructions including instructions that

9

cause a processor to" perform certain steps. *Id.,* Ex. A. at 20:33-46. A floppy disk or CD-ROM is

10

an example of a computer-readable medium. *Id.* at 5:14-19. *Performing steps* doesn't infringe

11

claim 1—if there's infringement, it's by *a computer-readable medium having the instructions,*

12

not by a computer processor's performance if it follows those instructions.

13

For several of the limitations of claim 1, the only processor instructions for which

14

Immersion alleges factual content are from the free technical demonstration *Moondust.* Compl.

15

¶¶ 63-65, 67-69, 71-72, 74-75, 77-78, 80-81. But Immersion doesn't allege Valve sells

16

computer-readable media with *Moondust* (and its processor instructions) installed—and the

17

Complaint doesn't even identify an accused computer-readable medium. *Id.* ¶ 57 (identifying

18

accused processor, but not a computer-readable medium). The Complaint, which alleges

19

performance of certain steps but fails to allege an accused computer-readable medium sold by

20

Valve that allegedly includes instructions that meet the limitations of claim 1, doesn't adequately

21

plead direct infringement of the '260 patent.

22

#### b.     *For the other six patents, the conclusory assertions that Valve performs the steps of the asserted method claims lack factual support and should be disregarded.*

23

24

Immersion otherwise asserts infringement of only method claims. *Id.* ¶¶ 88, 128, 156,

25

192, 214, 245. To state a claim that *Valve* directly infringes a method claim, Immersion must

26

allege that *Valve itself* performs each step of the claim. *See Ricoh,* 550 F.3d at 1335.

27

28

For each step of each method claim, Immersion alleges the legal conclusion that "Valve performs the claimed step under Valve's control for Valve's benefit." *E.g.,* Compl. ¶ 104. But each time that conclusion follows allegations about *user* conduct. *E.g., id.* ¶ 101 (alleging that users playing *Moondust* crush moon rocks). Immersion's conclusory assertion that *Valve* performs each step thus lacks factual support because *Valve* doesn't play a game when its users play a game; Immersion's say-so can't turn the user into *Valve.*

Immersion alleges that Valve has some control over how games are developed and sold, and sets requirements that users must meet to use their hardware. *See id.* ¶¶ 47-49. But although the facts alleged about infringement address *gameplay, e.g., id.* ¶¶ 63, 95, 140, 167, 206, 225, 260, Immersion doesn't allege that Valve controls *how users play games,* because when users play games, they make their own choices about how to play those games.

Because Immersion cannot by fiat transmute users' acts into acts by Valve itself, its repeated allegations about steps of method claims performed by *Valve* aren't well-pleaded and the Court should disregard them. *Iqbal,* 556 U.S. at 677-78; *see* Compl. ¶¶ 94, 100, 104, 116, 122-23, 139, 146, 150-51, 169, 172, 176, 181, 186-87, 205, 208-09, 224, 228, 232, 236, 239-40, 262, 273, 280-81. Setting aside those conclusory assertions, Immersion alleges no facts supporting a claim that Valve directly infringes any method claims.

### C.     If any claims remain, they should be narrowed.

For the reasons above, the Court should dismiss the Complaint entirely. But if claims remain, they should be narrowed, for two reasons. First, Immersion broadly accuses "game titles . . . that incorporate haptic capabilities," Compl. ¶ 2, but doesn't plead facts that support the breadth of that assertion. Second, Immersion seeks pre-suit damages. *Id.* at 75 (Prayer for Relief ¶ C). It fails, however, to allege that it's complied with the marking requirements of the Patent Act, which is a requirement prior to seeking pre-suit damages.

#### 1.     *Immersion's vague allegations that unspecified "games" infringe the patents fail to provide Valve with adequate notice and should be dismissed.*

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (cleaned up). In a

patent case, this means the plaintiff must identify accused products by name and explain how those products allegedly infringe the patents-in-suit to provide fair notice of the specific accused conduct. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsrch. Inst.*, No. 19-cv-05784-JST, 2020 WL 7392909, at *2-3 (N.D. Cal. July 23, 2020) (citation omitted). The Complaint fails to meet that standard.

Immersion defines the "Accused Handheld Instrumentalities" and the "Accused VR Instrumentalities" to mean not just hardware and necessarily associated operating software, but also unspecified "game titles." Compl. ¶ 2. In defining the Accused Instrumentalities, the Complaint mentions 11 "example" games, yet also seeks to encompass "any other game titles . . . that incorporate haptic capabilities." *Id.* ¶ 2.[9] Only 3 of the 11 "example" games, and none of the unnamed "other games," are ever mentioned again throughout Immersion's voluminous Complaint. Specifically, the patent-specific factual content for the '260, '507, '546, and '067 patents alleges that Valve hardware infringes when combined with one specific game— *Moondust. E.g., id.* ¶¶ 63, 95, 167, 230. Another game, *Counter-Strike: Global Offensive,* is the only game mentioned in connection with the '907 patent. *Id.* ¶¶ 198-99, 206. *Half-Life: Alyx* is the only game mentioned in connection with the '738 patent. *Id.* ¶¶ 257-59, 276; *see also id.* ¶¶ 260, 264-65, 277-78. The factual allegations for the '042 patent mention no games whatsoever. *Id.* ¶¶ 127-53.

Immersion's attempt to lasso other "games" into its definitions of the Accused Instrumentalities is inappropriate because it doesn't give Valve fair notice of what the infringement claims are for those other games. *See Twombly,* 550 U.S. at 555. This hand-waving is particularly troubling in a patent case like the present one, where Immersion could seek intrusive discovery for each accused game in an allegedly "vast catalog of . . . games that incorporate haptic effects," including many games developed by third parties. *See* Compl. ¶¶ 46-47. The problems with the loose definitions of the Accused Instrumentalities are compounded through the circular use of those defined terms. For example, Immersion alleges that Valve

---

[9] The overwhelming majority of those games weren't developed by Valve. *See id.* ¶ 47 (alleging details about Valve's relationship with third party developers).

exercises control over how "games and applications" are designed for "the Accused Handheld Instrumentalities and Accused VR Instrumentalities," *id.* ¶ 48, but the defined terms already *include* "game titles." This internally inconsistent use of the defined terms obfuscates the allegations and fails to provide notice what "certain named and specifically identified products or product components" allegedly infringe. *Celgard,* 2020 WL 7392909, at *2 (citation omitted).

Courts routinely dismiss complaints for accusing broad categories of products and failing to identify the *specific* products at issue, because such allegations don't provide fair notice to the accused infringer. *See, e.g.*, *id.* at *2-3 (dismissing complaint that accused non-specific "categories of products" of infringement, including "storage batteries, pouch cells, battery packs, and fuel systems"); *Artrip v. Ball Corp.*, No. 1:14CV00014, 2017 WL 5037470, at *3 (W.D. Va., Nov. 03, 2017) (dismissing complaint that alleged infringement "by use of one or more machines"), *aff'd,* 735 F. App'x 708 (Fed. Cir. 2018); *Anza Tech., Inc. v. D-Link Sys., Inc.*, No. 3:16-cv-01263-BEN-AGS, 2016 WL 8732647, at *5 (S.D. Cal. Nov. 4, 2016) (dismissing complaint that failed to identify accused products "by name or product number, but rather by the general, nonspecific category of 'electronics hardware products'" related to "integrated circuit chips"); *Interval Licensing LLC v. AOL, Inc.*, No. C10-1385 MJP, 2010 WL 5058620, at *3 (W.D. Wash. Dec. 10, 2010) (dismissing complaint that broadly accused "websites, hardware, and software" of infringing patents).

Immersion's claims about unidentified "games" warrant dismissal. Valve cannot defend itself without notice of the specific conduct alleged to infringe. A complaint for patent infringement must—at the bare minimum—describe "what the patent at issue does" and identify "*certain named and specifically identified products or product components* [that] also do what the patent does.'" *Celgard*, 2020 WL 7392909, at *2 (cleaned up) (emphasis added). The Court should:

> (i)  for the '260, '507, '546, and '067 patents, dismiss claims that games other than *Moondust* infringe;
>
> (ii)  for the '907 patent, dismiss claims that games other than *Counter-Strike: Global Offensive* infringe;

(iii)   for the '738 patent, dismiss claims that games other than *Half-Life: Alyx* infringe; and

(iv)   for the '042 patent, dismiss claims that any games infringe.

In the alternative, the Court should require an amended complaint specifically identifying the accused games and strike allegations about unnamed games if Immersion doesn't comply. Fed. R. Civ. P. 12(e).

> **2.      *The Court should dismiss the prayer for pre-suit damages because Immersion hasn't pleaded compliance with the marking requirements of the Patent Act.***

A patentee and its licensees may provide notice to the public that a product is patented by marking it with "patent" or "pat." and the patent number. 35 U.S.C. § 287(a). Absent such marking, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.; see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1537 (Fed. Cir. 1993).

Immersion bears the burden of pleading compliance with the marking statute. *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996). It alleges that it licenses "a broad portfolio of pioneering patents," including to "many of the world's most recognizable companies," Compl. ¶ 4, but hasn't pleaded compliance with section 287(a). Yet Immersion seeks damages for alleged "infringement occurring before the filing of this lawsuit." *Id.* at 75 (Prayer for Relief ¶ C). Because Immersion hasn't pleaded compliance with section 287(a), the Court should dismiss the prayer for pre-suit damages.

## CONCLUSION

For these reasons, Valve respectfully requests that the Court dismiss Immersion's Complaint. The Court should dismiss the first cause of action ('260 patent) based on both statutory and abstract-idea ineligibility, and the third, fourth, sixth, and seventh causes of action ('042, '546, '067, and '738 patents) based on abstract-idea ineligibility. The Court should also dismiss all causes of action because Immersion hasn't plausibly pleaded induced and direct

infringement. Any remaining claims should be limited to alleged infringement by identified, well-pleaded games, and the prayer for pre-suit damages should be dismissed.

Dated: July 24, 2023.                    FOX ROTHSCHILD LLP


                                          *Gavin W. Skok*
                                         Gavin W. Skok, WSBA #29766
                                         1001 Fourth Avenue, Suite 4400
                                         Seattle, WA  98154
                                         Ph. (206) 624-3600
                                         Email: gskok@foxrothschild.com

                                         And

                                         KWUN BHANSALI LAZARUS LLP
                                         Michael S. Kwun (*pro hac vice*)
                                         Kate E. Lazarus (*pro hac vice*)
                                         Scott W. Taylor (*pro hac vice*)
                                         555 Montgomery Street, Suite 750
                                         San Francisco, CA 94111
                                         Ph. (415) 630-2350
                                         Email: mkwun@kblfirm.com
                                         klazarus@kblfirm.com
                                         staylor@kblfirm.com

                                         *Attorneys for Defendant Valve Corporation*

                                         **<u>CERTIFICATION</u>**

                                         I certify that this memorandum contains 8,376 words in compliance with the Local Civil Rules.

## CERTIFICATION OF CONFERRAL

Pursuant to the Court's Standing Order for Civil Cases § II.D, the undersigned counsel certifies that counsel for the parties met and conferred regarding the relief requested in this motion but were unable to reach agreement. Counsel conferred regarding the relief sought in this motion during a video conference on July 21, 2023.

I certify that the foregoing is true and correct as of this 24th day of July, 2023.

KWUN BHANSALI LAZARUS LLP


 *s/ Michael S. Kwun*
*Attorneys for Defendant Valve Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle,

Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within

cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing

on counsel of record for all other parties to this action as indicated below:

| <u>Service List</u> | |
|---|---|
| Stefan Szpajda, WSBA #50106<br>Cristofer Leffler, WSBA #35020<br>Sam Kim<br>Palani P. Rathinasamy<br>C. Maclain Wells<br>Davis Schumann<br>Alexandra Olwen Fellowes<br>FOLIO LAW GROUP PLLC<br>1200 Westlake Ave. N., Ste. 809<br>Seattle, WA 98109<br>Ph. 206-880-1802<br>stefan@foliolaw.com<br>cres.leffler@foliolaw.com<br>sam.kim@foliolaw.com<br>palani@foliolaw.com<br>maclain@foliolaw.com<br>david.schumann@foliolaw.com<br>Alexandra.fellowes@foliolaw.com<br><br>*Attorneys for Plaintiff* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

I declare under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct.

EXECUTED this 24th day of July, 2023, in Seattle, Washington.

Courtney R. Brooks