THE HONORABLE TANA LIN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

IMMERSION CORPORATION,

    Plaintiff,

    v.

VALVE CORPORATION

    Defendant.

Case No. 2:23-CV-00712-TL

**JURY TRIAL DEMANDED**

**IMMERSION CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

**NOTE ON MOTION CALENDAR: AUGUST 25, 2023**

**ORAL ARGUMENT REQUESTED**

OPPOSITION TO VALVE'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .......................................................................................1

ARGUMENT ...............................................................................................................1

I.    Immersion's Claims are Patent-Eligible ...................................................1

    A.    Legal Standard ................................................................................1

    B.    Valve's Eligibility Arguments Rest on an Oversimplistic
        Analogy ..........................................................................................3

    C.    Claim 1 of the '260 Patent Is Patent Eligible ...............................6

        (1)    Claim 1 does not cover transitory signals. ........................6

        (2)    Claim 1 has already been found eligible. ...........................8

        (3)    Claim 1 recites an inventive concept. ................................9

    D.    Claim 1 of the '042 Patent Is Patent Eligible ...............................10

        (1)    Claim 1 is not directed to an abstract idea. .......................10

        (2)    Claim 1 recites an inventive concept. ................................11

    E.    Claim 15 of the '738 Patent Is Patent Eligible .............................11

        (1)    Claim 15 is not directed to an abstract idea. .....................11

        (2)    Claim 15 recites an inventive concept. ..............................13

    F.    Claim 11 of the '067 Patent Is Patent Eligible .............................13

        (1)    Claim 11 is not directed to an abstract idea. .....................13

        (2)    Claim 11 recites an inventive concept. ..............................14

    G.    Claim 5 of the '546 patent Is Patent Eligible ...............................14

        (1)    Claim 5 is not directed to an abstract idea. .......................14

        (2)    Claim 5 recites an inventive concept. ................................15

II.    Immersion's Direct Infringement Claims Are Adequately Pled ...........16

    A.    Valve Directly Infringes the '260 Patent .......................................16

OPP. TO VALVE'S MOTION TO DISMISS

i

Folio Law Group PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

B.       Valve Directly Infringes the Other Six Patents..........................................17

III.     Immersion's Inducement Claims are Adequately Pled..................................18

A.       Valve Has the Specific Intent to Induce Infringement...............................18

B.       Pre-Suit Knowledge is Not Required for Induced
         Infringement...............................................................................21

IV.      Immersion Adequately Identifies the Infringing Products...................................23

V.       Immersion's Prayer for Past Damages Does Not Require Compliance with
         the Marking Statute..........................................................................24

VI.      In the Alternative, the Court Should Grant Leave to Amend ...............................24

CONCLUSION..........................................................................................25

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................... 3

*Abraxis Bioscience, Inc. v. Navinta, LLC*,
   640 F. Supp. 2d 553 (D.N.J. 2009) ............................................................ 20

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208, 134 S. Ct. 2347 (2014) ...................................................... 2, 3

*Am. Med. Sys. v. Med. Eng'g Corp.*,
   6 F.3d 1523, Fed. Cir. 1993) ..................................................................... 24

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
   772 F. Supp. 1458 (D. Del. 1991) ............................................................. 19

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ................................................................... 3

*BlackBerry Ltd. v. Facebook, Inc.*,
   487 F. Supp. 3d 870 (C.D. Cal. Oct. 1, 2019) ............................................. 7

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
   CV 19-09129-AB (MAAx), 2020 U.S. Dist. LEXIS 252501 (C.D. Cal. July 1, 2020) ............ 3

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) ................................................................... 3

*Certain Mobile and Portable Electronic Devices Incorporating Haptics (Including
   Smartphones and Laptops) and Components Thereof*,
   Inv. No. 337-TA-1004, Order No. 43 (USITC April 6, 2017) ............................ 8, 9

*Coop. Entm't, Inc. v. Kollective Tech., Inc.*,
   50 F.4th 127 (Fed. Cir. 2022) ................................................................. 2, 3

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009) ................................................................. 24

*CyWee Grp., LTD. v. HTC Corp.*
   312 F. Supp. 3d 974 (W.D. Wash. 2018) .............................................. 20, 24

*Data Engine Techs. LLC v. IBM*,
No. 6:13-CV-860-RWS-JDL, 2015 U.S. Dist. LEXIS 68504
(E.D. Tex. May 27, 2015) ............................................................................................. 7

*Datanet LLC v. Microsoft Corp.*,
No. 2:22-cv-1545, 2023 U.S. Dist. LEXIS 101923 (W.D. Wash. June 12, 2023) ............... 1, 2

*Dennison Mfg. Co. v. Ben Clements & Sons,
Inc.*, 467 F. Supp. 391 (S.D.N.Y. 1979) ................................................................. 19

*Egenera, Inc. v. Cisco Sys.*,
234 F. Supp. 3d 331 (D. Mass. 2017) ........................................................................ 10

*Elec. Power Grp. LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ........................................................................ 12, 14

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................. 24

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ................................................................ 4, 10, 12

*Estech Sys., Inc. v. Target Corp.*,
2020 U.S. Dist. LEXIS 209893 (E.D. Tex. Aug. 27, 2020) ..................................... 24

*FootBalance Sys. v. Zero Gravity Inside, Inc.*,
2017 U.S. Dist. LEXIS 50668 (S.D. Cal. April 3, 2017) ......................................... 18

*Freescale Semiconductor, Inc. v. Amtran Tech. Co.*,
No. A-12-CV-644-LY, 2014 U.S. Dist. LEXIS 190724 (E.D. Tex. Feb. 10, 2014) .............. 23

*GoTV Streaming, LLC v. Netflix, Inc.*,
No. 2:22-cv-07556-RGK-SHK, 2023 U.S. Dist. LEXIS 27610
(C.D. Cal. Feb. 16, 2023)............................................................................................ 22

*Gree, Inc. v. Supercell Oy*,
No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 152908
(E.D. Tex. July 18, 2020)............................................................................................ 16

*Guada Techs. LLC v. Vice Media*, LLC,
341 F. Supp. 3d 390 (D. Del. 2018)........................................................................ 9

*Immersion Corp. v. Fitbit, Inc.*,
313 F. Supp. 3d 1005 (N.D. Cal. 2018) ........................................................... passim

*In re Nuijten,*
    500 F.3d 1346 (Fed. Cir. 2007) ...................................................................... 6, 8

*In re TLI Commc'ns LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016) ................................................................ 2, 12, 14

*Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.,*
    No. C16-0341JLR, 2017 U.S. Dist. LEXIS 193618
    (W.D. Wa. Nov. 21, 2017) ........................................................... 20, 22, 23, 24

*InVue Sec. Prods. Inc. v. Mobile Tech, Inc.,*
    No. 3:19-cv-407-SI, 2019 U.S. Dist. LEXIS 180669 (D. Or. Oct. 18, 2019) ........................ 22

*K9 Sport Sack, LLC v. Little Chonk Co.,*
    No. 22-5120, 2023 U.S. Dist. LEXIS 115287 (D.N.J. July 5, 2023) ...................................... 21

*KCG Techs., LLC v. CarMax Auto Superstores, Inc.,*
    424 F. Supp. 3d 196 (D. Mass. 2019) .................................................................. 11

*KomBea Corp. v. Noguar L.C.,*
    73 F. Supp. 3d 1348 (D. Utah 2014) .................................................................. 11

*Kremerman v. Open Source Steel, LLC,*
    No. C17-953-BAT, 2017 U.S. Dist. LEXIS 145960  (W.D. Wash. Sept. 8, 2017) ........... 20, 21

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66, 132 S. Ct. 1289 (2012) .................................................................... 3

*MAZ Encryption Techs. LLC v. BlackBerry, Ltd.,*
    No. 6:15-cv-1167-RWS-JDL, 2016 U.S. Dist. LEXIS 191607
    (E.D. Tex. June 7, 2016) ................................................................................ 23

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 (Fed. Cir. 2016) ................................................................... passim

*Mendenhall v. Astec Indus.,*
    513 U.S. 1018, 115 S. Ct. 582 (1994) ................................................................ 19

*Mendenhall v. Astec Indus., Inc.,*
    887 F.2d 1094 (Fed. Cir. 1989) ........................................................................ 19

*Mendenhall v. Astec Indus.,*
    No. CIV-1-86-2291988, U.S. Dist. LEXIS 19508 (E.D. Tenn. Oct. 31, 1988) ...................... 19

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017) ........................................................................ 8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ....................................................................................... 20

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
   1 F. Supp. 3d 1020 (C.D. Cal. 2014) ............................................................. 21

*Nichia Corp. v. Vizio, Inc.*,
   No. 2:16-CV-1453-JRG (LEAD CASE), 2017 U.S. Dist. LEXIS 188356
   (E.D. Tex. July 24, 2017)................................................................................ 23

*Oak Indus. v. Zenith Elecs. Corp.*,
   697 F. Supp. 988 (N.D. Ill. 1988) ................................................................. 19

*Papst Licensing GmbH v. Xilinx Inc.*,
   193 F. Supp. 3d 1069 (N.D. Cal. 2016) ......................................................... 11

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
   203 F.3d 790 (Fed. Cir. 2000) ....................................................................... 23

*R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission &
   Processing Sys. Patent Litig.)*, 681 F.3d 1323 (Fed. Cir. 2012) ............... 18, 19

*Ricoh Co. v. Quanta Comput. Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) ..................................................................... 17

*Ricoh Co., Ltd. v. Quanta Computer, Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) ..................................................................... 20

*Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs.*,
   No. 7:21-cv-00577, 2023 U.S. Dist. LEXIS 56543 (W.D. Va. Mar. 31, 2023) .............. 21

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*,
   No. 21-cv-02989-EJD, 2023 U.S. Dist. LEXIS 85757 (N.D. Cal. May 16, 2023) ................ 3

*Selex ES Inc. v. NDI Techs., Inc.*,
   No. 3:20-CV-637, 2021 U.S. Dist. LEXIS 255477 (W.D.N.C. Dec. 30, 2021)..................... 21

*Selex Es Inc. v. NDI Techs., Inc.*,
   No. 3:20-CV-637, 2022 U.S. Dist. LEXIS 55744 (W.D.N.C. Mar. 28, 2022)...................... 21

*Sequoia Tech., LLC v. Dell, Inc.*,
   66 F.4th 1317 (Fed. Cir. 2023) ....................................................................... 7

*Seven Networks, LLC v. Motorola Mobility LLC,*
No. 3:21-CV-01036-N, 2022 U.S. Dist. LEXIS 24709, (N.D. Tex. Feb. 10, 2022) ............... 21

*Sharafabadi v. Univ. of Idaho,*
No. C09-1043JLR, 2009 U.S. Dist. LEXIS 110904 (W.D. Wash. Nov. 27, 2009)................ 20

*Shopify Inc. v. Express Mobile, Inc.,*
No. 19-439-RGA, 2021 U.S. Dist. LEXIS 179773 (D. Del. Sept. 21, 2021) ......................... 11

*SiRF Tech., Inc. v. ITC,*
601 F.3d 1319 (Fed. Cir. 2010) ....................................................................................... 17, 18

*Sonos, Inc. v. Google LLC,* 591 F. Supp.
3d 638, 647 (N.D. Cal. Mar. 16, 2022)................................................................................. 22

*TecSec, Inc. v. Adobe Inc.,*
978 F.3d 1278 (Fed. Cir. 2020) .............................................................................................. 8

*Traxcell Techs. LLC v. Google LLC,*
No. 22-cv-04807-JSC, 2022 U.S. Dist. LEXIS 209184 (N.D. Cal. Nov. 17, 2022) .............. 20

*Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC,*
874 F.3d 1329 (Fed. Cir. 2017) ....................................................................................... 12, 14

*Uniloc USA, Inc. v. ADP, LLC,*
772 F. App'x 890 (Fed. Cir. 2019) ................................................................................. passim

*Utherverse Gaming LLC v. Epic Games Inc.,*
No. 2:21-cv-799-RSM-TLF, 2021 U.S. Dist. LEXIS 248920
(W.D. Wash. Nov. 2, 2021) .................................................................................................... 3

*vPersonalize Inc. v. Magnetize Consultants Ltd.,*
437 F. Supp. 3d 860 (W.D. Wash. 2020)................................................................................ 18

*Windy City Innovations, LLC v. Microsoft Corp.,*
193 F. Supp. 3d 1109 (N.D. Cal. 2016) ................................................................................. 23

*ZapFraud, Inc. v. Barracuda Networks, Inc.,*
528 F. Supp. 3d 247 (D. Del. 2021)....................................................................................... 21

*Zond, Inc. v. SK Hynix, Inc.,*
Nos. 13-11591-RGS & 13-11570-RGS2014, U.S. Dist. LEXIS 12201
(D. Mass. Jan. 31, 2014) ....................................................................................................... 21

OPP. TO VALVE'S MOTION TO DISMISS

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

## INTRODUCTION

Immersion's 76-page Complaint details Valve's infringement down to the source-code level. Valve responds to Immersion's more-than-thorough pleading by seeking dismissal of the Complaint in its entirety. But Valve fails to carry its burden on even a single issue, ignoring precedent, the allegations in the Complaint, or both. Valve's motion should be denied. Alternatively, if the Court grants any part of Valve's motion, it should grant Immersion leave to amend.

## FACTUAL BACKGROUND

Founded in 1993, Immersion is the pioneering innovator of haptic technology. Dkt. 1, ¶ 4. "Haptics" refers to the science of touch. *Id.* Haptics provide tactile sensations to users of electronic devices. *Id.* Immersion owns and licenses to many of the world's most recognizable companies a portfolio of haptics patents. *Id.* Valve developed the accused hardware products at issue, i.e., the Valve Index and Steam Deck, and their integrated software. *Id.* ¶¶ 2, 44-45. Valve also sells games for both the Valve Index and Steam Deck through its Steam platform. *Id.* ¶ 46. Valve exercises control over the development and deployment of the games it sells on Steam. *Id.* ¶¶ 47-52. The Valve Index and Steam Deck infringe advanced haptic features claimed in the asserted patents. *Id.* ¶¶ 53-283.

Immersion filed its Complaint May 15, 2023. Dkt. 1. Valve filed its motion to dismiss July 24, 2023, and re-noted it on August 7, 2023. Dkts. 37-38.

## ARGUMENT

## I.   IMMERSION'S CLAIMS ARE PATENT-ELIGIBLE

### A.   Legal Standard

Patent eligibility is a question of law, based on underlying facts. *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 896 (Fed. Cir. 2019); *Datanet LLC v. Microsoft Corp.*, No. 2:22-cv-1545, 2023 U.S. Dist. LEXIS 101923, at *9 (W.D. Wash. June 12, 2023) (on Rule 12(b)(6) motion courts can examine "the claim language, the specification, and the prosecution history, if included with

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

the filings," and courts "may also use the specification to illuminate whether the claims are directed to the identified abstract idea") (cleaned up). Courts analyze eligibility under the two-step *Alice* framework. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Patent eligibility may be resolved at the Rule 12 stage only if there are no factual disputes after drawing all reasonable inferences in favor of the non-movant. *Coop. Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) (reversing finding of ineligibility).

In step one, courts determine whether the claims are "directed to" a patent-ineligible concept. *Alice*, 573 U.S. at 218. Courts evaluate "the claimed advance over the prior art" to determine if "the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Uniloc*, 772 F. App'x at 896 (citations omitted). The Federal Circuit has cautioned that courts "'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016), citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016); *Datanet*, 2023 U.S. Dist. LEXIS 101923, at *15 ("Defendant's characterization of the Asserted Patents is overly broad and too simplistic."). In step one of *Alice*, in the context of computer innovations, the inquiry "often turns" on whether the claims focus on "specific asserted improvements," which is patentable, or on an abstract idea where computers are invoked "merely as a tool," which is not patentable. *Id.* at *10.

If a claim is directed to an excluded subject matter, courts proceed to *Alice* step two. There, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. at 217 (citation omitted). Step two "looks more precisely at what the claim elements add" to determine if despite being directed to an abstract idea the claim includes an "inventive concept." *Uniloc*, 772 F. App'x at 896 (citations omitted). To be found eligible under step two, the inventive concept must be more than a well-understood, routine, and conventional activity known to a skilled artisan at the time of the patent. *Berkheimer v. HP*

*Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). As such, it is a "question of fact that cannot be resolved at the Rule 12(b)(6) stage." *Coop. Entm't*, 50 F.4th at 133 (district court erred in resolving factual issue against plaintiff) (citation omitted); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1130 (Fed. Cir. 2018) ("There are factual allegations in the second amended complaint, which when accepted as true, prevent dismissal pursuant to Rule 12(b)(6).").

The Federal Circuit has reversed district courts when they have failed to accept as true allegations that "aspects of the claims are inventive," *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315-17 (Fed. Cir. 2019) (reversing dismissal because district court "erred with respect to the inventive concept inquiry" at step two "by ignoring allegations that, when properly accepted as true, preclude the grant of a motion to dismiss"), and courts—including in this District— routinely deny motions on the pleadings under step two. *Utherverse Gaming LLC v. Epic Games Inc.*, No. 2:21-cv-799-RSM-TLF, 2021 U.S. Dist. LEXIS 248920, at *30 (W.D. Wash. Nov. 2, 2021) ("Any material questions of fact on the subject of 'inventive concepts' precludes a dispositive ruling on patentability.") (citations omitted); *Samsung Elecs. Co. v. Blaze Mobile, Inc.*, No. 21-cv-02989-EJD, 2023 U.S. Dist. LEXIS 85757, at *33-34 (N.D. Cal. May 16, 2023) (denying Rule 12(c) motion, finding claims eligible under step two); *Ceiva Logic, Inc. v. Amazon.com, Inc.*, CV 19-09129-AB (MAAx), 2020 U.S. Dist. LEXIS 252501, at *22 (C.D. Cal. July 1, 2020) ("the Court determines that underlying questions of fact exist as to whether the Asserted Patents add an inventive concept to the abstract idea and denies Defendant's Motion on this basis.").

### B.   Valve's Eligibility Arguments Rest on an Oversimplistic Analogy

Valve's patent eligibility arguments rest on an oversimplified comparison to a single, inapposite claim—i.e., precisely the analysis the Supreme Court and the Federal Circuit instruct district courts to reject. *Compare Alice*, 134 S. Ct. at 2354, citing *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 71 (2012) ("At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"); *McRO*, 837

F.3d at 1313 *with* Dkt. 37 at 5-13, citing *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005 (N.D. Cal. 2018).

Specifically, Valve color-codes claim 27 of the '301 patent, which the *Fitbit* court found ineligible, *id.* at 1027, and repeatedly argues that the claims Valve challenges in its motion resemble it. Dkt. 37 at 5-13. But Valve provides no explanation to support its argument that the claims at issue resemble claim 27. *Id*. Moreover, missing from Valve's motion is any acknowledgment that the *Fitbit* court considered claims from two additional Immersion patents— the '105 patent and the '299 patent—and found them patent eligible under *Alice* step one. *Fitbit*, 313 F. Supp. 3d at 1024, 1026. At bottom, Valve's color-coding is designed to confound by reducing each claim to generic input, processing, and output steps divorced from the claim language, distorting the claims' character as a whole. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule"). Under Valve's color-coding, any claim involving a processor could be reduced to input, processing, and output steps and thus rendered ineligible. This is contrary to the Federal Circuit's precedent, under which "the relevant question for purposes of step one is what is the focus of the claimed advance over the prior art." *Uniloc*, 772 F. App'x at 898 (cleaned up). As detailed below, *infra* I.C-G, Valve does not even attempt to follow the Federal Circuit's guidance on this point.

The claims challenged by Valve are much more similar to the eligible claims in *Fitbit*. Claim 19 of the '105 patent reads:

> 19. A haptic feedback device, comprising:
>
> one or more processors configured to receive an input signal and generate a force signal based on the input signal,
>
> wherein the input signal is associated with a user-independent event,
>
> the user-independent event comprising one or more of a

reminder event, an initiation of a task, a processing of the task, a conclusion of the task, a receipt of an email, or an event occurring in a game; and

one or more actuators configured to receive the force signal and impart a haptic effect based on the force signal.

Relying on oversimplification similar to Valve's, Fitbit argued claim 19 is directed to "vibrating to communicate that an event that is independent of the user of a device, e.g., receipt of an email, has occurred." *Fitbit*, 313 F. Supp. 3d at 1021. The court disagreed, finding that its "invention of a touchpad or other similar device that provides haptic feedback is a new arrangement of known components that solves the problem of how to provide non-audio, non-visual notification to a user. Such an invention is patent-eligible." *Id.* at 1024. Likewise, as detailed below, the challenged claims are directed to improvements to haptic technology. *Infra* I.C-G.

Similarly, claim 20 of the '299 patent recites:

20. An apparatus comprising:

a housing;

a sensor coupled to the housing that senses motion of the housing and provides a sensor output based on if the sensed motion exceeds a predetermined threshold;

a timer coupled to the housing that measures at least one time period and provides a timer output on expiration of the at least one time period; and

a vibrotactile device that provides a haptic output based on the sensor output if the vibrotactile device receives the sensor output before the timer output and provides the haptic output and provides the haptic output based on the timer output if the vibrotactile device receives the timer output before the sensor output.

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

Fitbit argued claim 20 is "directed to the abstract idea of vibrating to communicate movement of a device or expiration of a timer," and covers "fundamental practices long prevalent in human society" such as "notifying a person when either a motion threshold has been reached or time has run out has long been performed by humans." *Fitbit*, 313 F. Supp. 3d at 1025. The court again disagreed, finding claim 20 directed to an apparatus that "senses motion, tracks time, and notifies a user through haptic feedback when either a threshold amount of motion occurs or time expires, whichever happens first" and criticized Fitbit's characterization as "unpersuasive" because it ignores the claim's "new and useful arrangement of components that solves the problem of how to notify a user that a predetermined number of motions have occurred in an environment where audio or visual alerts would not be effective." *Id.* Here too, as detailed below, the challenged claims are directed to improvements in haptic technology. *Infra* I.C-G.

## C.    Claim 1 of the '260 Patent Is Patent Eligible

### (1)    Claim 1 does not cover transitory signals.

Claim 1 requires "[a] computer-readable medium ***having instructions***" that cause a processor to perform certain steps. Dkt. 1-002 at 20:33-34 (claim 1)) (emphasis added). Valve argues the '260 patent defines "computer-readable medium having instructions" as covering instructions transmitted over a transmission channel, which are—according to Valve—"by necessity, transitory" and thus ineligible under *In re Nuijten*, 500 F.3d 1346, 1354 (Fed. Cir. 2007). Dkt. 37 at 3-4. In effect, Valve makes an inchoate claim construction argument about "computer-readable medium having instructions" and asks this Court to rule—without claim construction briefing—that it means what Valve says. But Valve ignores intrinsic evidence that forecloses transitory signals from claim 1. The Federal Circuit recently reversed a court's equation of a claim to the one found in *Nuijten* after the court failed to consider intrinsic evidence. *Sequoia Tech., LLC v. Dell, Inc.*, 66 F.4th 1317, 1325 (Fed. Cir. 2023) (reversing district court's finding of ineligibility because it was based on erroneous construction of "computer-readable recording medium").

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

Here, the claimed computer-readable medium "having instructions" does not cover transitory signals because (1) the ordinary meaning of "instructions" is "compiled source code" and (2) transitory signals do not have or contain "compiled source code." *See, e.g.*, *Data Engine Techs. LLC v. IBM*, No. 6:13-CV-860-RWS-JDL, 2015 U.S. Dist. LEXIS 68504, at *18-22 (E.D. Tex. May 27, 2015) (finding "computer-readable medium containing instructions" do not cover transitory signals because transitory signals do not contain instructions); *BlackBerry Ltd. v. Facebook, Inc.*, 487 F. Supp. 3d 870, 903-04 (C.D. Cal. Oct. 1, 2019) ("the parties' dispute rests on a purely legal claim construction determination: the meaning of the term 'computer readable medium' … on the current record and when balanced against the intrinsic evidence cited by BlackBerry, the Court is not persuaded by Facebook Defendants' citations to extrinsic evidence for the proposition that transitory waves can 'store' computer code, as required by the claims.") (cleaned up). The specification confirms that the ordinary meaning of "instructions" is "compiled source code," stating "computer readable media . . . stores instructions that, when executed by the controller, cause the controller to perform the steps described[.]" Dkt. 1-002 at 5:7-10. At minimum, claim construction is necessary to resolve the meaning of "instructions," as in *Data Engine*. *See* 2015 U.S. Dist. LEXIS 68504 at *21.

Moreover, the specification confirms that "computer-readable medium" is in communication with a controller:



Such controllers include, or may be in communication with, media, for example computer readable media, which stores instructions that, when executed by the controller, cause the controller to perform the steps described herein as carried out, or assisted, by a controller.

Dkt. 1-002 at FIG. 1 (annotated in red) and 5:5-10 (highlighted). Controllers communicate with storage devices, not transitory signals. This is the opposite of *Nuijten* and *Mentor Graphics*, where

transitory signals were included in the claim. *Nuijten*, 500 F.3d at 1351 (ineligible claim expressly including "[a] signal"); *Mentor Graphics Corp. v. EVE-USA, Inc.,* 851 F.3d 1275, 1301 (Fed. Cir. 2017) ("Because the challenged '526 claims are expressly defined by the specification to cover carrier waves, they are . . . ineligible[.]").

Relatedly, Valve argues—without evidence—that transmission channels are "by necessity, transitory." Dkt. 37 at 4. But the specification refers to a "transmission device or channel" as physical device, not transitory signals. Dkt. 1-002 at 5:19-22. Immersion is not aware of any decision that holds a "transmission device or channel" is transitory at all, let alone "by necessity."

### (2) Claim 1 has already been found eligible.

Claim 1 is directed to patent-eligible improvements: a haptic feedback technique that gradates tactile output based on input pressure, solving a human-computer interaction problem. Dkt. 1, ¶¶ 33-34; *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (ruling that solutions to technological problems are non-abstract improvements to computer-related technology). In *Fitbit*, the court found claims from Immersion's '105 and '299 patents directed to "tangible, non-abstract device . . . [that] notif[ies] the device's user of independent events through vibration" (*Fitbit*, 313 F. Supp. 3d at 1023) and "a tangible device comprising a new and useful arrangement of components that solves the problem of how to notify a user that a predetermined number of motions have occurred" (*id.* at 1025). Just like these claims, claim 1 of the '260 patent is directed to improved haptic functionality. *Compare* Dkt. 1-002 at 20:33:-46 (claim 1) *with Fitbit*, 313 F. Supp. 3d at 1023, 1025.

Notably, Valve fails to alert the Court to an earlier *Alice* challenge to claim 1 at the International Trade Commission ("ITC"), which found it eligible at step one. *Certain Mobile and Portable Electronic Devices Incorporating Haptics (Including Smartphones and Laptops) and Components Thereof*, Inv. No. 337-TA-1004, Order No. 43 at 6-7 (USITC April 6, 2017). The ITC rejected Apple's oversimplification of claim 1 as directed to "data gathering" and "tactile sensations" and ruled that claim 1 was not abstract because it was "directed to solving the problem

of the user needing differing haptic feedback to assist with using the device 'in bright light environments such as in bright sunlight. . . with small fonts and graphics that are difficult to read and select.'" *Id.* at 2, 6-7 (alterations in original). The ITC found that "[t]he patent resolves this issue by detecting at least three different levels of pressure during a single interaction and providing haptic feedback based thereon." *Id.* (citing Dkt. 1-002 at 12:31-55).

Undeterred, Valve repeats Apple's characterization of claim 1 as directed to "detecting pressures and providing tactile sensations." Dkt. 37 at 7. This already-rejected oversimplification ignores the requirements of claim 1. *McRO*, 837 F.3d at 1313. Valve also presumes that "detecting pressures and providing tactile sensations" is an abstract idea without providing evidence. Valve cites no cases so holding and, importantly, "detecting pressures and providing tactile sensations" is not a fundamental economic practice, mental process, method of organizing human activity, or mathematical concept—i.e., any of the recognized categories of abstract ideas. *Guada Techs. LLC v. Vice Media*, LLC, 341 F. Supp. 3d 390, 395 (D. Del. 2018) (collecting authority identifying examples of abstract ideas). *Fitbit* held the opposite: improvements to haptic systems for communicating events to users through vibration are not abstract. *Fitbit*, 313 F. Supp. 3d at 1023.

### (3)   Claim 1 recites an inventive concept.

Under *Alice* step two, the Court must accept as true allegations in the Complaint that the challenged claims recite an inventive concept. *Supra* I.A. Valve ignores the allegations, and relies on a generic statement of law. Dkt. 37 at 8. Immersion alleges the asserted patents combine "specific hardware and software components in unconventional ways" and through "novel innovations" expand "haptic stimulation to provide users feedback based on a range of interactions with video game systems and controllers" resulting in combinations of features that are "uniquely technological" and improve on known systems and methods for providing haptic feedback." Dkt. 1, ¶ 33. For example, the '260 patent describes advances in providing haptic feedback in electronic devices such as gamepads and portable gaming devices. *Id.* ¶ 34. The '260 patent teaches, among other things, "systems in which the electronic device detects different levels of pressure on the

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

device and provide tactile sensations in response." *Id.* These allegations preclude a finding on a Rule 12(b)(6) motion that claim 1 lacks an inventive concept.

### D.   Claim 1 of the '042 Patent Is Patent Eligible

#### (1)   Claim 1 is not directed to an abstract idea.

Like the eligible claims in *Fitbit*, claim 1 of the '042 patent is directed to improvements to haptic systems. Dkt. 1, ¶¶ 33, 36. For example, claim 1 recites a particular technique for generating a vibrotactile effect comprising a virtual detent (e.g., mechanical resistance) at a touchpad, which is analogous to what the *Fitbit* court found evidenced non-abstractness. *Compare* Dkt. 1, ¶ 36; Dkt. 1-004 at 15:2-14 (claim 1) *with Fitbit*, 313 F. Supp. 3d at 1023-25.

First, Valve's characterization of the claim as "generating virtual detents using haptic effects" (Dkt. 37 at 8) and "receiving information and outputting a haptic effect" (*id.* at 9) are improper oversimplifications. *McRO*, 837 F.3d at 1313. And even if they were correct, Valve does not show that "generating virtual 'detents' using haptic effects" is an abstract idea. Valve cites no case law for that proposition and does not argue that "generating virtual 'detents' using haptic effects" is a mental process, method of organizing human activity, or mathematical concept. And Valve's color-coding analysis obscures the claim's character as a whole. *Enfish,* 822 F.3d at 1336. Valve also fails to address the "claimed advance over the prior art." *Unloc*, 772 F. App'x at 896.

Second, Valve argues any claim that "[e]mulat[es] functionality" is *per se* abstract. Dkt. 37 at 9. It's not. *McRO,* 837 F.3d at 1303 (finding claims about producing realistic lip synchronization and facial expressions in computer-animated characters non-abstract); *Egenera, Inc. v. Cisco Sys.*, 234 F. Supp. 3d 331, 337-43 (D. Mass. 2017) (finding claim that required control node to "include network emulation logic to emulate Ethernet functionality over the internal communication network" was eligible "[w]hether at *Alice* step 1 or step 2" because it offered "a unique arrangement of networked processors and control nodes with the specified messaging, mapping, and Ethernet emulation functions"); *Shopify Inc. v. Express Mobile, Inc.*, No. 19-439-RGA, 2021 U.S. Dist. LEXIS 179773, *37-38 (D. Del. Sept. 21, 2021) (construing "virtual machine" to mean

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

"software that emulates a physical machine" and denying motion for summary judgment of ineligibility). The cases Valve does cite are inapposite, and the claims were found ineligible not because they related to emulating, but because their focus was on an abstract idea. *KCG Techs., LLC v. CarMax Auto Superstores, Inc.,* 424 F. Supp. 3d 196 (D. Mass. 2019) (in-vehicle virtual smartphone did not improve computer functionality); *KomBea Corp. v. Noguar L.C.,* 73 F. Supp. 3d 1348, 1356-57 (D. Utah 2014) (making sales presentations more effective described fundamental economic practices); *Papst Licensing GmbH v. Xilinx Inc.,* 193 F. Supp. 3d 1069, 1084-85 (N.D. Cal. 2016) (process for determining whether memory test violates rules described mental process). In contrast, claim 1 is directed to particular technique for generating a tangible, vibrotactile effect comprising a virtual detent at a touchpad, which represents an improvement to computer-related technology.

### (2)  Claim 1 recites an inventive concept.

Valve's motion ignores the allegations in the Complaint, and relies on a generic statement of law. Dkt. 37 at 9. Immersion alleges the asserted patents combine "specific hardware and software components in unconventional ways" and through "novel innovations" expand "haptic stimulation to provide users feedback based on a range of interactions with video game systems and controllers" resulting in combinations of features that are "uniquely technological" and improve on known systems and methods for providing haptic feedback." Dkt. 1, ¶ 33. For example, the '042 patent describes advances in providing haptic feedback in portable video players and portable game systems. *Id.* ¶ 36; Dkt. 1-002 at 1:22-2:3. The '042 patent teaches, among other things, "providing virtual detents to simulate mechanical feedback through vibrotactile feedback delivered to an input device such as, for example, a touch-pad." Dkt. 1, ¶ 36. These allegations preclude a finding on a Rule 12(b)(6) motion that claim 1 lacks an inventive concept.

### E.  Claim 15 of the '738 Patent Is Patent Eligible

### (1)  Claim 15 is not directed to an abstract idea.

Claim 15 of the '738 patent is directed to improvements to haptic systems. Dkt. 1, ¶¶ 33, 40. Claim 15 specifies a series of discrete steps a haptics-enabled device performs to generate useful haptic output from non-contact interactions (e.g., when the user's finger is hovering over but not touching a touch-sensitive surface) in addition to contact interactions, providing haptic information to users even when they're neither looking at nor touching a screen. Dkt. 1-008 at 14:5-15:6 (claim 15). The specification confirms this solves a technological problem because touch-sensitive input devices "may be used in situations in which the user is unable or unwilling to look at the device during use." *Id.* at 1:16-19. To address this, the specification describes the claimed method to detect the user's non-contact interaction (e.g., finger hover) using a proximity sensor and to generate a haptic signal based in part on that information to guide the user's finger in the appropriate direction. *Id.* at 10:45-47. This no-look notification functionality is similar to the non-abstract technological improvement found in *Fitbit*. 313 F. Supp. 3d at 1023-25 (finding that '105 patent's discussion of vibratory notification and '299 patent claim's ability to haptically notify user when audio-visual alerts are ineffective evidenced non-abstractness).

Claim 15 is distinguishable from the ineligible claims cited by Valve because those claims focused on generic steps without providing a technological improvement. *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) (claims focused on generic data gathering and processing rather than improved functionality); *Fitbit,* 313 F. Supp. 3d 1005 (same); *Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (same). And Valve's characterization of the claim as "detecting proximity and touch information and generating a haptic response based on that information" (Dkt. 37 at 10) and "[r]eceiving and processing contact and non-contact information . . . [and] generating a response" (*id.* at 10-11) improperly abstract away specific limitations and the improvement they provide. *In re TLI Commc'ns*, 823 F.3d at 611. As with the earlier patents, Valve's color-coding analysis is improper because it distorts the claim's character as a whole. *Enfish*, 822 F.3d at 1336. Valve further fails to identify the alleged category of abstract idea or to address the "claimed advance over the prior art." *Uniloc*,

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

1    772 F. App'x at 896.

2    <center>**(2)    Claim 15 recites an inventive concept.**</center>

3    Valve ignores the allegations, and relies on a generic statement of law. Dkt. 37 at 11.

4    Immersion alleges the asserted patents combine "specific hardware and software components in

5    unconventional ways" and through "novel innovations" expand "haptic stimulation to provide

6    users feedback based on a range of interactions with video game systems and controllers" resulting

7    in combinations of features that are "uniquely technological" and improve on known systems and

8    methods for providing haptic feedback." Dkt. 1, ¶ 33. For example, the '738 patent describes

9    advances in providing haptic feedback in video game controllers. *Id.* ¶ 40; *see also* Dkt. 1-008 at

10   1:13-36. The '738 patent teaches, among other things, "generating haptic feedback based at least

11   in part on a first signal received from a proxy sensor capable of detecting a non-contact interaction

12   with a touch-sensitive device and a second signal received from a touch-sensitive device upon

13   detecting a touch." Dkt. 1, ¶ 40. These allegations preclude a finding on a Rule 12(b)(6) motion

14   that claim 15 lacks an inventive concept.

15   <center>**F.    Claim 11 of the '067 Patent Is Patent Eligible**</center>

16   <center>**(1)    Claim 11 is not directed to an abstract idea.**</center>

17   Claim 11 of the '067 patent is directed to an improvement to augmented reality technology,

18   including techniques for changing the look and feel of a real-world object by overlaying "modified

19   visual effect" onto the real-world object ("proxy object") and haptic effect to the real-world object

20   for an updated feel. Dkt. 1, ¶¶ 33, 39; Dkt. 1-007 at 11:20-33 (claim 11). Claim 11 recites the steps

21   that achieve this improved functionality. *Id.* The specification confirms this improved functionality

22   solves a technological problem, stating that "[i]n AR space, it is difficult to provide a haptic effect

23   to the user." *Id.* at 1:20-21. To address this problem, the claimed method can generate a modified

24   visual object (e.g., "blue leather shoe" (*id.* at 8:9)) and output a haptic effect that simulates the feel

25   of the modified visual object (e.g., "texture of blue leather on the shoe" (*id.* at 8:28-29)). Because

26   claim 11 focuses on visual-haptic functionality rather than generic data gathering and analysis,

27
   FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

claim 11 is eligible. *Elec. Power,* 830 F.3d 1350 (claims focused on generic data gathering and processing not improved functionality); *Fitbit,* 313 F. Supp. 3d 1005 (same); *Two-Way Media,* 874 F.3d 1329 (same).

Valve ignores claim language when it characterizes claim 11 as directed to "determining and transmitting 'modified visual' and haptic effects based on sensor data." Dkt. 37 at 17; *In re TLI Commc'ns*, 823 F.3d at 611. And even if it were correct, Valve skips the required showing that it qualifies as an abstract idea—i.e., a mental process, method of organizing human activity, or mathematical process. And Valve again uses its color-coding argument to distort the claim. *See id.* Finally, as above, Valve continues to neglect to analyze the "claimed advance over the prior art[,]" which is fatal to its motion. *Uniloc*, 772 F. App'x at 896.

### (2)     Claim 11 recites an inventive concept.

Valve ignores the allegations, and relies on a generic statement of law. Dkt. 37 at 12. Immersion alleges the asserted patents combine "specific hardware and software components in unconventional ways" and through "novel innovations" expand "haptic stimulation to provide users feedback based on a range of interactions with video game systems and controllers" resulting in combinations of features that are "uniquely technological" and improve on known systems and methods for providing haptic feedback." Dkt. 1, ¶ 33. For example, the '067 patent describes advances in providing haptic feedback in AR/VR systems. *Id.* ¶ 39; Dkt. 1-007 at 7:52-8:48. The '067 patent teaches, among other things, "transmitting a visual effect through a display on a proxy object comprising one or more haptic output devices, and transmitting a haptic effect to one or more haptic output devices based in part on sensor data." Dkt. 1, ¶ 39. These allegations preclude a finding on a Rule 12(b)(6) motion that claim 11 of the '067 patent lacks an inventive concept.

### G.     Claim 5 of the '546 patent Is Patent Eligible

### (1)     Claim 5 is not directed to an abstract idea.

Claim 5 is directed to a specific technique for modulating haptic output characteristics based on extra-sensory input, Dkt. 1, ¶¶ 33, 37, and recites the specific steps of "receiving input

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

from a sensor compris[ing] extra-sensory information . . . and one or more interaction parameters," "mapping the received input to a haptic signal," and "modulating the haptic signal when new input is received, [which] comprises an update of at least one value of at least one interaction parameter." Dkt. 1-005 at 17:45-62 (claim 5). Together, these steps recite a particular technique for modulating a haptic output based on a dynamic interaction parameter input that improves upon prior art haptic systems, just as the eligible claims in *Fitbit* did. *Fitbit,* 313 F. Supp. 3d 1023, 25.

Valve characterizes the claim as "collecting information and generating haptic effects that change as the inputs change" (Dtk. No. 37 at 12) and "changing a response based on changed inputs" (*id.* at 13). Again, this improperly oversimplifies the claim. *McRO*, 837 F.3d at 1313. Valve argues that "'extra-sensory information' isn't inventive either." Dkt. 37 at 13. The claim is not merely drawn to "extra-sensory information" but the use of such information to improve the functionality of a haptic system. And Valve has again not shown that "collecting information (including 'extra-sensory information') and generating haptic effects that change as the inputs change" (Dkt. 37 at 12) is an abstract idea because Valve cites no cases so holding. *Supra* I.C.2. Valve's color-coding again distorts the claim and its failure to address the claimed advance over the prior art is improper. *Uniloc*, 772 F. App'x at 896.

### (2)     Claim 5 recites an inventive concept.

Valve ignores the allegations, and relies on generic statement of law. Dkt. 37 at 13. Immersion alleges the asserted patents combine "specific hardware and software components in unconventional ways" and through "novel innovations" expand "haptic stimulation to provide users feedback based on a range of interactions with video game systems and controllers" resulting in combinations of features that are "uniquely technological" and improve on known systems and methods for providing haptic feedback." Dkt. 1, ¶ 33. For example, the '546 patent describes advances in providing haptic feedback in game consoles. *Id.* ¶ 37; Dkt. 1-005 at 9:12-15, 9:33-35. The '546 patent teaches, among other things, "generating haptic effects based on received inputs,

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

including extra-sensory information." Dkt. 1, ¶ 37. These allegations preclude a finding on a Rule 12(b)(6) motion that claim 11 of the '546 patent lacks an inventive concept.

## II.   IMMERSION'S DIRECT INFRINGEMENT CLAIMS ARE ADEQUATELY PLED

### A.   Valve Directly Infringes the '260 Patent

Valve argues that Immersion fails to plead direct infringement of claim 1 of the '260 patent because it "fails to allege an accused computer-readable medium ***sold*** by Valve that allegedly includes instructions that meet the limitations of claims 1" (emphasis added) and that "the only processor instructions for which Immersion alleges factual content are from the free technical demonstration *Moondust*." Dkt. 37 at 19.[1] Valve misrepresents the allegations in the Complaint.

Consistent with the claim language, Immersion alleges Valve infringes claim 1 by "***using***" the Accused VR Instrumentalities—i.e., the Valve Index, its integrated software, and game titles. Dkt. 1, ¶ 54 (emphasis added). It alleges that Valve specifies processor requirements for the Valve Index. Dkt. 1, ¶ 57. It then alleges that Valve provides the Valve Index, which interoperates with Valve's "SteamVR" application and supports inputs from engines on which VR games are built. *Id.*, ¶¶ 58-59. Immersion further alleges the Valve Index ships with the "Steam Input API, which is a flexible action-based API that supports all major controller types." *Id.*, ¶ 59. The API "includes member functions, such as, TriggerHapticPulse, that "[t]riggers a (low-level) haptic pulse on supported controllers. *Id.*, ¶ 60. It then provides an example of how the Valve Index, operating Valve's software, carries out the claimed method in the context of the *Moondust* game, and how it interprets relevant API calls from the game to provide haptics using hardware and software integrated by Valve. *Id.*, ¶¶ 56-85. Immersion further alleges that use of software, such as

---

[1] If the Court analyzes claim 1 as a *Beauregard* claim, it should treat it as method claim. *Gree, Inc. v. Supercell Oy*, Case No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 152908, at *8-9 (E.D. Tex. July 18, 2020).

OPP. TO VALVE'S MOTION TO DISMISS

16

*Moondust*, are made under Valve's direction and control through Steam. *Id.*, ¶¶ 47-52, 62, 66, 70, 73, 76, 79, 82, 83. Immersion thus plausibly alleges that Valve directly infringes claim 1. *Gree*, 2020 U.S. Dist. LEXIS 152908 at *9 (denying motion for summary judgment where "evidence form[ed] a sufficient basis for a juror to conclude that Brawl Stars, operating on a Supercell Oy controlled server, carries out the methodical limitations of the *Beauregard* claims by using end user devices").

**B.     Valve Directly Infringes the Other Six Patents**

In a few cursory paragraphs, Valve seeks dismissal of Immersion's six additional claims arguing that users of games perform the infringing methods, rather than Valve. Dkt. 37 at 19-20. Valve misrepresents the Complaint, and ignores relevant authority.

Immersion alleges that Valve enables users to play games on the Valve Index and Steam Deck, and the devices interpret inputs from games to infringe the asserted claims. Dkt. 1, ¶¶ 90-93, 109-114, 130, 133-137, 140-148, 158-170, 174-184, 194-206, 216-235. This is reflected in the claim language, which in each claim is directed to methods performed by Valve. *Id.*, ¶¶ 88, 128, 156, 192, 214, 245. Immersion alleges these steps are performed under Valve's control and for Valve's benefit. *Id.*, ¶¶ 47-52, 123, 151, 187, 209, 240, 281. Immersion further alleges that Valve directly infringes by ***using*** these methods. *Id.*, ¶¶ 87, 127, 155, 191, 213, 244. *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325 (Fed. Cir. 2008) is inapposite. In *Ricoh* the Federal Circuit ruled that a party that merely "sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Id.* at 1335. Valve performs the infringing methods with hardware, software, and game titles available through Steam, together with which Valve carries out the infringing methods.

The Complaint is better analogized to *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010). There, the Federal Circuit ruled the infringer "performs all of the claim limitations" where the chip and software, "designed and built by [the accused infringer], automatically perform the disputed steps of the claims at issue because the [accused] chips are programmed by [the accused

infringer] to use the [relevant] data automatically if it has been transmitted to the remote device." *Id.* at 1331. The infringer argued direct infringement could not lie where users were needed to "initiate the process of downloading the [relevant] data by connecting the device to the Internet and activating the [accused] functionality." *Id.* at 1330-31. The Federal Circuit rejected this, noting such "argument misreads the claim limitations" and read limitations in. *Id.* Importantly, direct infringement of method claims under *SiRF Tech* is not limited to instances of automatic processing by the accused device. *Gree*, 2020 U.S. Dist. LEXIS 152908 at *6 (noting the "Court agrees with GREE that provision of hardware and automatic processing were not ruled necessary for direct infringement of a method claim"; denying summary judgment of no direct infringement where disputes of fact existed and patentee had argued "the method claims are infringed by [defendant]'s software controlling users' devices that are receiving each element of the claimed process."). Under *SiRF Tech*, even if the Court accepts Valve's argument that users initiate gameplay, Valve directly infringes.

## III.   IMMERSION'S INDUCEMENT CLAIMS ARE ADEQUATELY PLED

### A.   Valve Has the Specific Intent to Induce Infringement

Valve concedes that Immersion pleads allegations directed to inducement; it nonetheless argues that Immersion fails to plead specific intent to induce. Dkt. 37 at 15-17. The allegations are more than sufficient. *vPersonalize Inc. v. Magnetize Consultants Ltd.*, 437 F. Supp. 3d 860, 881 (W.D. Wash. 2020) (finding it is sufficient for claim of induced infringement to put defendant on notice of infringing product, actions that defendant took in furtherance of infringement, and identity of direct infringer).

First, the Federal Circuit has held that advertising products for use with particular software evidences inducement. *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1341-42 (Fed. Cir. 2012) *superseded by statute on other grounds as noted in FootBalance Sys. v. Zero Gravity Inside, Inc.*, No.: 15-CV-1058 JLS (DHB), 2017 U.S. Dist. LEXIS 50668, at *6 (S.D. Cal. April 3, 2017). Citing Valve's promotional

18

materials, Immersion alleges that Valve promotes haptic features of the accused products and encourages their infringing use. Dkt. 1, ¶¶ 44-45. Immersion also shows Valve promotes Steam, available to users through the accused hardware, where users purchase games that implement infringing haptic effects. *Id.*, ¶ 46; *compare* Dkt. 1, ¶¶ 2, 44-52 *with In re Bill of Lading*, 681 F.3d at 1341-42 ("Common sense indicates that advertising that your product can be used [in infringing manner] gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method."). Valve's promotion of infringing behavior supports Valve's specific intent to induce infringement. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466-67 (D. Del. 1991) ("[A] cause of action for inducing patent infringement arises out of advertising."). Relatedly, although Valve criticizes Immersion's allegations showing Valve instructs developers to incorporate haptics, Dkt. 37 at 22, such instructions are relevant because Valve provides "examples of how developers can add haptics to games and applications that run on the Accused Handheld Instrumentalities and Accused VR Instrumentalities." Dkt. 1, ¶ 48.

Second, a court may find inducement—even where there is no instruction on infringement to customers—where the intended use is apparent. *Mendenhall v. Astec Indus.,* No. CIV-1-86-2291988, U.S. Dist. LEXIS 19508, at *163 (E.D. Tenn. Oct. 31, 1988) ("The fact that Astec provided no direct instruction on infringement to its customers, even if proven, would not foreclose a finding of active inducement under these circumstances, since the intended use of Astec's products would have been readily apparent to the customer."), *aff'd* 887 F.2d 1094 (Fed. Cir. 1989), *cert. denied* 513 U.S. 1018 (1994). Immersion's allegations show that the intended use of the accused devices is apparent, and the haptics are enabled by default. *Compare* Dkt. 1, ¶¶ 44-46, 111-14, 142-44 (showing how haptic effects are enabled in default settings of accused devices) *with Oak Indus. v. Zenith Elecs. Corp.*, 697 F. Supp. 988, 993 (N.D. Ill. 1988) ("a seller of a product that infringes by its apparent and expected use may not need to actively encourage in order to be liable for aiding and abetting the infringer.") (citing *Dennison Mfg. Co. v. Ben Clements &*

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

*Sons, Inc.*, 467 F. Supp. 391 (S.D.N.Y. 1979) ("The fact that defendant does not actually instruct the ultimate users of the product in its use does not prevent our finding active inducement of infringement, since the intended manner or use of the product is readily apparent.")); *Abraxis Bioscience, Inc. v. Navinta, LLC*, 640 F. Supp. 2d 553, 570 (D.N.J. 2009), *rev'd on other grounds*, 625 F.3d 1359 (Fed. Cir. 2010) ("encouraging actions need not be communicated to the direct infringer.") (citation omitted).

Immersion details who performs the method and how Valve encourages use. Dkt. 1, ¶¶ 84, 124, 152, 188, 210, 241. This mirrors *Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*, No. C16-0341JLR, 2017 U.S. Dist. LEXIS 193618, at *11-12 (W.D. Wash. Nov. 21, 2017) (identification of defendant's customers and defendant's advertising of infringing use and instructions on infringing use sufficient to plead inducement). Immersion has provided factual support showing direct infringement by Valve and how customers infringe the patents by describing how the steps of the method are performed. *Compare id.* at *10, *12 *with* Dkt. 1, ¶¶ 53-283. The Court can infer from this that Valve intends its customers to infringe, and takes affirmative steps to induce infringement. *Intellicheck*, 2017 U.S. Dist. LEXIS 193618 at *14.

Valve's cases are distinguishable. In *Sharafabadi v. Univ. of Idaho*, the court found the complaint insufficient because it pled sale and use of the accused seeds, but not facts alleging defendant's induced infringement. No. C09-1043JLR, 2009 U.S. Dist. LEXIS 110904, at *14 (W.D. Wash. Nov. 27, 2009). Here, Immersion has alleged more than sale. Dkt. 1, ¶¶ 44-46, 84, 124, 152, 188, 210, 241. In *CyWee Grp., LTD. v. HTC Corp.*, the court affirmed that advertising is one example of taking steps to encourage direct infringement. 312 F. Supp. 3d 974, 978 (W.D. Wash. 2018). Plaintiff's pleadings fell short because the instructions did not relate to the accused features. *Id.* at 979. Here, promotions and instructions tout the benefits of haptics. Dkt. 1, ¶¶ 44-46, 84, 152, 188, 210, 241, 282. Finally, in *Kremerman v. Open Source Steel, LLC* the complaint did not identify who was induced or how. No. C17-953-BAT, 2017 U.S. Dist. LEXIS 145960, at *7-8 (W.D. Wash. Sep. 8, 2017).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**B.      Pre-Suit Knowledge is Not Required for Induced Infringement**

Induced infringement can be based on post-suit knowledge of the patents. *Intellicheck*, 2017 U.S. Dist. LEXIS 193618 at *36. Valve suggests that there is a recent trend toward requiring pre-suit knowledge. Dkt. 37 at 17-18. There is not. *Traxcell Techs. LLC v. Google LLC*, No. 22-cv-04807-JSC, 2022 U.S. Dist. LEXIS 209184, at *16 (N.D. Cal. Nov. 17, 2022) (noting that allowing allegations based on post-suit knowledge is "majority" view); *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs.*, No. 7:21-cv-00577, 2023 U.S. Dist. LEXIS 56543, at *20 (W.D. Va. Mar. 31, 2023) (same); *Seven Networks, LLC v. Motorola Mobility LLC*, No. 3:21-CV-01036-N, 2022 U.S. Dist. LEXIS 24709, at *31-32 (N.D. Tex. Feb. 10, 2022) (same); *Selex ES Inc. v. NDI Techs., Inc.*, No. 3:20-CV-637, 2021 U.S. Dist. LEXIS 255477, at *18 (W.D.N.C. Dec. 30, 2021) (same).

Moreover, courts have criticized the few cases that deviate from the majority. Valve emphasizes Judge Connolly's decision in *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247 (D. Del. 2021). But *ZapFraud* has since been criticized as contrary to public policy and judicial economy. *See K9 Sport Sack, LLC v. Little Chonk Co.*, No. 22-5120, 2023 U.S. Dist. LEXIS 115287, at *11 (D.N.J. July 5, 2023) (endorsing majority view, finding "competing interests outweigh the concerns raised by Chief Judge Connolly"). The *K9 Sport Sack* court held that a defendant should not be able to avoid liability for induced infringement simply because it learned of the patent through the complaint. *Id. K9 Sport Sack* echoes earlier decisions criticizing the minority view. In *MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020 (C.D. Cal. 2014) the court considered the split on pre-suit knowledge and concluded that pre-suit knowledge should not be a requirement because holding otherwise would:

> give a defendant carte blanche to continue to indirectly infringe a patent—
> now with full knowledge of the patents-in-suit—so long as it was ignorant
> of the patents prior to being served itself with the complaint. This strange

reward would quickly erode the foundation upon which Congress constructed § 271(b) and (c)'s liability structure.

*Id.* at 1025; *Kremerman*, 2017 U.S. Dist. LEXIS 145960, at *7.

The cases cited by Valve are the few that have adopted the minority view; they do not provide a reason to deviate from *Intellicheck*. The quoted sentence from *InVue Sec. Prods. Inc. v. Mobile Tech, Inc.*, No. 3:19-cv-407-SI, 2019 U.S. Dist. LEXIS 180669, at *10 (D. Or. Oct. 18, 2019) is taken out of its procedural context. Plaintiff argued that pre-suit and post-suit induced infringement were not separate claims and so a claim for *pre*-suit induced infringement could be made based on an allegation of *post*-suit knowledge. *Id.* at Plaintiff's Memo. in Opposition to Mot. to Dismiss First Amended Compl., Dkt. 24 at 16 (June 5, 2019). The court found that they are separate claims. *InVue*, 2019 U.S. Dist. LEXIS 180669 at *10. Thus, when the court stated that pre-suit knowledge was required it was ruling on the specific question of whether pre-suit liability could be maintained based on post-suit knowledge.

*GoTV Streaming, LLC v. Netflix, Inc.* is an outlier for the reasons stated in the decision itself. No. 2:22-cv-07556-RGK-SHK, 2023 U.S. Dist. LEXIS 27610, at *7 (C.D. Cal. Feb. 16, 2023). Judge Klausner acknowledged the disagreement among courts, but nonetheless maintained that pre-suit knowledge is required. *Id.* ("the fact that judges who disagree with the Court have been elevated to the Federal Circuit does not compel the Court to change its reasoning"). Judge Alsup in *Sonos, Inc. v. Google LLC* addressed the policy rationales for willful infringement; he then concluded that the same applies to inducement. 591 F. Supp. 3d 638, 647 (N.D. Cal. Mar. 16, 2022). But the decision does not grapple with policy considerations in the context of inducement. *Id.* In contrast, Judge Robart analyzed in detail the rationale for allowing plaintiffs to plead induced infringement based on post-suit knowledge. *Intellicheck*, 2017 U.S. Dist. LEXIS 193618 at *29-37.

IV.    **IMMERSION ADEQUATELY IDENTIFIES THE INFRINGING PRODUCTS**

Valve argues that Immersion provides insufficient notice of Valve's infringement because the accused products include reference to "game titles" without listing every game title available on the accused hardware. Dkt. 37 at 20-23; *see also* Dkt. 1, ¶¶ 2, 44-46. Valve mispresents Immersion's infringement allegations, and the level of detail required for a complaint.

First, Immersion identified the accused products—i.e., Accused VR Instrumentalities and Accused Handheld Instrumentalities, which correspond to the Valve Index and Steam Deck and their software and game titles available through Valve's Steam platform. Dkt. 1, ¶¶ 2, 44-46. Immersion also identified 11 exemplary game titles, *id.* ¶ 2, and provided exemplary descriptions of several games. *Id.* ¶¶ 53-283. For each asserted patent, Immersion identified at least one infringed claim and showed how the accused products practice the claims. *Id.* Nothing more is required. *Intellicheck*, 2017 U.S. Dist. LEXIS 193618 at *20 (infringement adequately alleged where complaint "attached the patents-in-suit, described its protected technology, identified the accused products, and described how those products allegedly perform the same functions or methods that are protected").

Second, Valve argues that Immersion's reference to game titles does not give notice of infringement "for those other games." Dkt. 37 at 21. But Valve cites no case that requires Immersion to illustrate every way the Valve Index and Steam Deck infringe. Courts have found the opposite. *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1115 (N.D. Cal. 2016) ("defendant's argument that it should be entitled to notice at the pleading stage of which specific products infringed on which specific claims in the patents is belied by both the local patent rules and Federal Circuit authority.") (citation omitted); *Nichia Corp. v. Vizio, Inc.*, No. 2:16-CV-1453-JRG (LEAD CASE), 2017 U.S. Dist. LEXIS 188356, at *10 (E.D. Tex. July 24, 2017) ("courts have recognized that a plaintiff need not exhaustively identify each and every infringing product and component thereof in its complaint"); *Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, NO. A-12-CV-644-LY, 2014 U.S. Dist. LEXIS 190724, at *14 (E.D. Tex. Feb. 10, 2014)

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109, Tel: 206-880-1802

("Funai's implied argument that a complaint for patent infringement must identify every accused product is incorrect."); *MAZ Encryption Techs. LLC v. BlackBerry, Ltd.*, No. 6:15-cv-1167-RWS-JDL, 2016 U.S. Dist. LEXIS 191607, at *9 (E.D. Tex. June 7, 2016) ("[a]llegations to the level of detail contained in infringement contentions are not required at the pleading stage").

Finally, the cases relied on by Valve are all distinguishable on their face because each involved a failure to identify products by name or to provide sufficient detail regarding how the products infringe. Dkt. 37 at 22. In contrast, Immersion identifies accused products and illustrates how they infringe through examples. Dkt. 1, ¶¶ 2, 44-46, 53-283. Nothing more is required. *Intellicheck*, 2017 U.S. Dist. LEXIS 193618 at *2.

## V.   IMMERSION'S PRAYER FOR PAST DAMAGES DOES NOT REQUIRE COMPLIANCE WITH THE MARKING STATUTE

Valve moves to dismiss Immersion's prayer for pre-suit damages because Immersion has not pled that it complies with the marking requirements of the Patent Act. Dkt. 37 at 23. Valve ignores that the Federal Circuit has "long held" that "the notice provisions of section 287 do not apply where the patent is directed to a process or method." *Estech Sys., Inc. v. Target Corp.*, 2020 U.S. Dist. LEXIS 209893, at *22-23 (E.D. Tex. Aug. 27, 2020) (quoting *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) (citations omitted)); *see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply."). Immersion's prayer for pre-suit damages is adequately pled as to the patents from which Immersion asserts only method claims. Dkt. 1, ¶¶ 88, 128, 156, 192, 214, 245.

## VI.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT LEAVE TO AMEND

Valve's only request for dismissal with prejudice is directed to the eligibility of claim 1 of the '260 patent. Dkt. 37 at 4. As a general rule, when a court grants a motion to dismiss, it should do so with leave to amend. *CyWee Grp.*, 312 F. Supp. at 981 citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). The Court should deny Valve's motion or,

at a minimum, grant Immersion leave to amend the Complaint. As to the other claims, Valve has not sought dismissal with prejudice. If the Court grants any part of Valve's motion, it should do so without prejudice.

## CONCLUSION

The Court should deny Valve's motion. Alternatively, if the Court grants any part of Valve's motion, it should grant Immersion leave to amend.

DATED: August 21, 2023

Respectfully submitted,

**FOLIO LAW GROUP PLLC**

*/s/Stefan Szpajda*
Stefan Szpajda, WA Bar No. 50106
Cristofer Leffler, WA Bar No. 35020
Sam Kim, CA Bar No. 221600 (Admission *pro hac vice*)
Palani P. Rathinasamy, CA Bar No. 269852 (Admission *pro hac vice*)
C. Maclain Wells, CA Bar No. 221609 (Admission *pro hac vice*)
David Schumann, CA Bar No 223936 (Admission *pro hac vice*)
Alexandra Olwen Fellowes, CA Bar No. 261929(Admission *pro hac vice*)
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802
Email: stefan@foliolaw.com
         cris.leffler@foliolaw.com
         sam.kim@foliolaw.com
         palani@foliolaw.com
         maclain@foliolaw.com
         david.schumann@foliolaw.com
         alexandra.fellowes@foliolaw.com

*Attorneys for Plaintiff Immersion Corporation.*

I certify that this memorandum contains 8,383 words, in compliance with the Local Civil Rules.

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I caused the foregoing to be served on all counsel of record via ECF.

*/s/Stefan Szpajda*
Stefan Szpajda