|   |   |
|---|---|
| | UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE |
| IMMERSION CORPORATION,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>VALVE CORPORATION,<br><br>　　　　　　　Defendant. | CASE NO. 2:23-cv-00712-TL<br><br>ORDER ON MOTION TO STAY PENDING *INTER PARTES* REVIEW |

This is an action for patent infringement involving the application of haptics to augmented reality ("AR") and virtual reality ("VR") technology. This matter is before the Court on Defendant Valve Corporation's Motion to Stay Case Pending Resolution of Petitions for *Inter Partes* Review. Dkt. No. 62; *see also* Dkt. No. 64-1 (praecipe). Having reviewed Plaintiff Immersion Corporation's response (Dkt. No. 65), Defendant's reply (Dkt. No. 66), and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS the motion and STAYS the case pending a decision on Defendant's petitions for *inter partes* review.

## I. BACKGROUND

On May 14, 2023, Plaintiff commenced this action. Dkt. No. 1. Plaintiff asserts numerous claims involving seven different patents: U.S. Patent No. 7,336,260 ("the '260 Patent"); U.S. Patent No. 8,749,507 ("the '507 Patent"); U.S. Patent No. 9,430,042 ("the '042 Patent"); U.S. Patent No. 9,116,546 ("the '546 Patent"); U.S. Patent No. 10,627,907 ("the '907 Patent"); U.S. Patent No. 10,665,067 ("the '067 Patent"); and U.S. Patent No. 11,175,738 ("the '738 Patent") (collectively, "the Patents-in-Suit"). *See* Dkt. Nos. 1-2–1-8; Dkt. No. 63 (Kwun declaration) ¶ 3. The Patents-in-Suit "generally teach novel systems and methods for generating haptic signals used to generate haptic feedback in, among other things, video game systems and controllers." Dkt. No. 1 ¶ 33; *see also id.* ¶¶ 34–40. On July 24, 2023, Defendant filed a motion to dismiss, which remains pending.[1] Dkt. No. 37.

Between January 19, 2024, and March 22, 2024, Defendant filed seven petitions for *inter partes* review ("IPR") by the Patent Trial and Appeal Board ("PTAB"), challenging all seven of the Patents-in-Suit. *See* Dkt. No. 63 ¶ 8; Dkt. No. 67 (Dinh declaration) ¶ 3. The PTAB has issued preliminary response dates for all petitions except for the one challenging the '907 Patent, which Defendant expects to be issued "soon." Dkt. No. 67 ¶¶ 5–6; *see* Dkt. No. 65-1 (Szpajda declaration) ¶ 6. The PTAB's institution decisions are expected between July and October 2024. 35 U.S.C. § 314(b); *see* Dkt. No. 65-1 ¶ 6. When the PTAB grants a petition, it has one year to complete the review, but may extend the one-year period by up to six months for good cause. 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c). Thus, if the PTAB grants all of Defendant's petitions and grants an IPR trial on all of the patents, the IPR trials and decisions should conclude by October 2025, but may be extended to April 2026. *Id.*

---

[1] The Court held oral argument on the motion on February 8, 2024.

1  Defendant now moves to stay this matter pending the outcome of its IPR petitions. Dkt.
2  Nos. 62, 64-1; *see also* Dkt. No. 66 (reply). Plaintiff opposes. Dkt. No. 65.

3  **II.    LEGAL STANDARD**

4  "The [district] court has the authority to stay [a] case pending the outcome of an IPR
5  petition." *WAG Acquisition, LLC v. Amazon.com, Inc.*, No. C22-1424, 2023 WL 1991888, at *1
6  (W.D. Wash. Feb. 14, 2023); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir.
7  1988). "To determine whether to grant such a stay, the court considers (1) whether a stay will
8  simplify the court proceedings; (2) the stage of the case; and (3) whether a stay will unduly
9  prejudice or present a clear tactical disadvantage to the non-moving party." *WAG Acquisition*,
10 2023 WL 1991888, at *1 (citing *Pac. Bioscience Lab'ys, Inc. v. Pretika Corp.*, 760 F. Supp. 2d
11 1061, 1063 (W.D. Wash. 2011)); *accord WSOU Invs., LLC v. F5 Networks, Inc.*, No. C20-1878
12 *et al.*, 2022 WL 766997, at *1 (W.D. Wash. Mar. 14, 2022) (citing the same).

13 **III.   DISCUSSION**

14 Defendant argues that all relevant factors weigh in favor of granting a stay. *See* Dkt.
15 No. 64-1 at 8–14. Specifically, Defendant argues: (1) a stay would simplify the issues and trial of
16 this matter (*id.* at 9–12); (2) the matter is in its early stages (*id.* at 12–13); and (3) Plaintiff would
17 suffer no undue prejudice or tactical disadvantage (*id.* at 13–14). In opposition, Plaintiff argues
18 that all factors weigh against a stay. *See* Dkt. No. 65 at 8–15.

19 **A.    Simplification of the Case**

20 The Court first considers "whether and to what extent staying these cases pending the
21 outcome of the IPR petitions would simplify the issues and the trial in this case." *SRC Labs, LLC*
22 *v. Microsoft Corp.*, No. C18-321, 2018 WL 6065635, at *2 (W.D. Wash. Nov. 20, 2018) (citing
23 *Pac. Bioscience*, 760 F. Supp. 2d at 1063).

24

Defendant's IPR petitions challenge every asserted claim of the Patents-in-Suit. *Compare* Dkt. No. 63 ¶ 3 (asserted claims) *with id.* ¶ 8 (challenged claims). Thus, IPR may be dispositive of this matter. *See WAG Acquisition*, 2023 WL 1991888, at *2 ("[T]here is a substantial risk that both the court and the parties will needlessly expend valuable resources in determining the validity of patent claims that are ultimately cancelled or amended by the USPTO."). The PTAB's 2023 fiscal year-end statistics indicate that the PTAB instituted review on 67 percent of petitions filed. Dkt. No. 63 at 11. The institution rate rises to 70 percent for patents directed to "Electrical/Computer" technology, like the Patents-in-Suit. *Id.* at 13. The PTAB previously instituted review of claims 1 and 2 of the '260 Patent—a strong indication that it is likely to institute review here, given the same patent and the related other Patents-in-Suit. *Id.* ¶ 11. And the "closely related subject matter" among the Patents-in-Suit makes it "more likely that the PTAB rules similarly" on all seven petitions. *SRC Labs*, 2018 WL 6065635, at *3.

Plaintiff argues that data regarding IPR petitions about its own patents suggest institution is unlikely, as only 166 of 463 claims (challenged across 43 IPRs) have been reviewed and only 29 claims cancelled. *See* Dkt. No. 65 at 10–11. However, Defendant explains that 14 of the 43 IPRs were mooted by settlements before an institution decision, and five others were denied because they were second petitions filed after institution decisions in prior IPRs challenging the same patents. *See* Dkt. No. 66 at 7. Moreover, "[o]f the 24 petitions where the PTAB considered the *merits*, it granted review in 19 (79.1%) IPRs." *Id*. These data demonstrate a strong likelihood of institution.

Finally, even if some claims survive IPR, the Court would benefit from the expert analysis of the PTAB in managing multiple aspects of this matter. Plaintiff points out that Defendant "has not asked the PTAB to construe any terms" (Dkt. No. 65 at 11), but the Court still believes that the PTAB's analysis will shed light on the meaning and scope of the Patents-in-

Suit, even if it will not conclusively resolve any claim construction disputes. Plaintiff also argues that "the IPR may not fully resolve even the invalidity arguments put forth by [Defendant]," as Defendant did not file a *Sotera* stipulation and is raising defenses that will not be addressed by IPR. *See* Dkt. No. 65 at 11–12. But even without a *Sotera* stipulation, if the PTAB issues a final written decision on IPR, Defendant will be estopped from raising the same arguments in this matter. *See* 35 U.S.C. § 315(e)(2). And even if IPR would not address some of Defendant's defenses, "if the PTAB invalidates the claims, [Defendant's] invalidity defenses would be moot." *SRC Labs*, 2018 WL 6065635, at *3. For all these reasons, simplification of the case weighs in favor of a stay.

**B.    Stage of the Litigation**

Next, the Court considers "the stage of the litigation." *SRC Labs*, 2018 WL 6065635, at *4 (citing *Pac. Bioscience*, 760 F. Supp. 2d at 1063). "'[T]he proper time to measure the stage of the litigation' is at 'the date of the filing of the motion to stay.'" *Id.* (quoting *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014)).

This matter is in its early stages, and Defendant's motion to dismiss remains pending. *See* Dkt. No. 37. Plaintiff argues that "the parties have made substantial progress in litigation." Dkt. No. 65 at 13. While some discovery has occurred and preliminary infringement and validity contentions have been exchanged (*see id.* at 6), only "minimal documents" have been exchanged, and no depositions have been scheduled (*see* Dkt. No. 64-1 at 7). Further, at the time Defendant filed its motion to stay, the close of fact discovery was more than five months away, the close of expert discovery was almost nine months away, the *Markman* hearing was four months away, and trial was nearly 16 months away. *See* Dkt. No. 46 (scheduling order); *see also, e.g.*, *Pac. Bioscience*, 760 F. Supp. 2d at 1066 ("The fact that substantial additional discovery, claim construction, and other issues lie ahead in this case weighs in favor of a stay."). Further, the

1  Parties had not yet filed their joint claim chart and prehearing statement, though they are filed
2  now. *See* Dkt. No. 68. Therefore, the stage of the litigation weighs in favor of a stay.

3  **C.      Prejudice to the Non-Moving Party**

4       Finally, the Court considers "undue prejudice" to Plaintiff. *SRC Labs*, 2018 WL 6065635,
5  at *4 (citing *Pac. Bioscience*, 760 F. Supp. 2d at 1063). "Courts . . . 'have found that mere delay
6  does not demonstrate undue prejudice.'" *Id.* (quoting *Implicit Networks, Inc. v. Advanced Micro*
7  *Devices, Inc.*, No. C08-184, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009)).

8       Plaintiff makes no showing that it will suffer any prejudice or clear tactical disadvantage
9  from a stay. Plaintiff argues that a stay "would harm [its] commercial interests," although it
10 concedes that it "does not directly compete with [Defendant] in the video game industry." Dkt.
11 No. 65 at 14. Still, Plaintiff insists "that is not the relevant comparison under the circumstances"
12 because it is "in the business of licensing its haptics technology" to, among others, operators in
13 the video game industry. *Id.* But as another court in this District has observed, "[c]ourts have
14 consistently found that a patent licensor cannot be prejudiced by a stay because monetary
15 damages provide adequate redress for infringement." *WAG Acquisition*, 2023 WL 1991888, at *3
16 (citation omitted); *see also VirtualAgility*, 759 F.3d at 1318 ("A stay will not diminish the
17 monetary damages to which [plaintiff] will be entitled if it succeeds in its infringement suit—it
18 only delays realization of those damages . . . .").[2]

19      Moreover, Plaintiff's invocation of clear tactical disadvantage based on the timing of
20 Defendant's IPR petitions (*see* Dkt. No. 65 at 14) is conclusory and unavailing; while Defendant

---

[2] Plaintiff points to *Walker Digital, LLC v Google, Inc.,* No. C11-318, 2014 WL 2880474 (D. Del. June 24, 2014), where the court noted that the longer the defendant was allowed to engage in allegedly infringing activity, the lower the value of the patents would become as licensing assets. Dkt. No. 65 at 15. However, in that case, the patents-in-suit were set to expire in two years, so any delay affected the plaintiff's ability to license the patents. *Walker Digit.,* 2014 WL 2880474, at *1. Here, Plaintiff makes no such argument about the impending expiration of any of the Patents-in-Suit.

could have filed its petitions earlier, it is not "clear" what the tactical disadvantage to Plaintiff would be, beyond the prejudice or disadvantage inherent in any stay. Plus, trial is currently scheduled for June 2025 and Defendant's IPR petitions (if instituted) would likely be resolved by October 2025. This four-month delay "is not significant, especially where the parties are not direct competitors." *SRC Labs*, 2018 WL 6065635, at *5. Therefore, this lack of demonstrable prejudice or tactical disadvantage weighs in favor of a stay.

D.     **Balancing the Factors**

As a general matter, this Court remains wary of issuing a stay before the PTAB has made a decision on whether to institute an IPR petition. *See, e.g.*, *RealD Spark LLC v. Microsoft Corp.*, No. C22-942, 2023 WL 5836459, at *1 (W.D. Wash. Aug. 25, 2023) (denying motion for stay as premature). However, there is no blanket rule; as the *Pacific Bioscience* factors make clear, a court's inquiry is ultimately dependent on the facts of a particular case. And in this case, all factors weigh in favor of a stay. *See supra* Sections III.A–C. Further, at least two circumstances mitigate the Court's usual concerns about pre-institution stays. First, as noted above, the PTAB previously instituted review on claims in the '260 Patent—historical evidence that was not present in *RealD*. Dkt. No. 63 ¶ 11. Second, *RealD* included non-infringement claims like breach of contract and misappropriation of trade secrets. However, this matter presents only infringement claims; there are no independent claims that would be prejudiced by a stay of the full case.[3] For all the reasons explained above, the Court finds a pre-institution stay appropriate in this matter.

//

//

---

[3] Even when non-patent claims were present, this Court ultimately granted a stay after the PTAB instituted review. *See RealD Spark LLC v. Microsoft Corp.*, No. C22-942, 2024 WL 343224, at *2 (W.D. Wash. Jan. 30, 2024).

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Defendant's motion (Dkt. Nos. 62, 64-1) is GRANTED.

(2) This matter is STAYED pending the PTAB's decision on Defendant's IPR petitions.

(3) Defendant's Motion to Dismiss (Dkt. No. 37) is STRICKEN with leave to refile.

(4) All case deadlines that remain as of the date of this Order are VACATED.

(5) The Parties SHALL meet and confer and file a joint status report **within fourteen (14) days** of receiving the PTAB's decision on all seven petitions, or **by November 1, 2024**, whichever occurs earlier.

Dated this 4th day of April 2024.

Tana Lin
United States District Judge